Ernest E. WAYLAND, Plaintiff,

v.

SHORE LOBSTER & SHRIMP CORP., Noel J. Blackman, Laurence J. Matusow and Morton J. Nussbaum, Defendants.

SHORE LOBSTER & SHRIMP CORP. and Shore Seafood Brokerage, Inc., Counterclaim Plaintiffs,

v.

Ernest WAYLAND, Ocean Garden Products, Inc. and Oceanic Sales, Inc., Counterclaim Defendants.

No. 81 Civ. 4038(MEL).

United States District Court, S. D. New York.

May 5, 1982.

Wisehart & Koch, New York City, for plaintiff; Arthur M. Wisehart, New York City, of counsel.

Proskauer, Rose, Goetz & Mendelsohn, New York City, for defendants; Steven J. Stein, Edward A. White, New York City, of counsel.

Curtis, Morris & Safford, P. C., New York City, for counterclaim defendants Ocean Garden Products, Inc. and Oceanic Sales Corp.; Lee C. Robinson, Jr., New York City, of counsel.

LASKER, District Judge.

Ernest E. Wayland, a former shareholder, officer, director and employee of Shore Lobster & Shrimp Corp. ("Shore"), alleges that Shore and its remaining shareholders have breached the agreement (under which Wayland sold his shares to Shore and resigned his positions with Shore) by failing to pay him pursuant to a promissory note given at the time of the separation agreements and by failing to pay him consulting fees as provided in their consulting arrangement. Wayland also alleges that defendants have maliciously conspired to interfere with his "advantageous prospective relationship" with Ocean Garden Products, Inc. ("Ocean") in violation of § 1 of the Sherman Act, 15 U.S.C. § 1, and in breach of the common law of unfair competition. (Complaint, ¶ 8).

Defendants counterclaim that while Wayland was still an officer, director, employee and shareholder of Shore, he breached his fiduciary duties to the company in various ways, such as by competing with the company, by inducing clients to stop dealing with Shore, and by appropriating a corporate opportunity for himself. Defendants also seek rescission of the separation agreements with Wayland, alleging that they were fraudulently induced and materially breached while Wayland was still employed at Shore. In addition, defendants claim that Ocean and Oceanic Sales, Inc. ("Oceanic Sales") conspired with Wayland improperly to obtain Shore's accounts and to misuse Shore's confidential information and that Ocean breached its confidentiality agreement with Shore.

Wayland moves for disqualification of defendants' counsel, the law firm of Proskauer, Rose, Goetz & Mendelsohn, and appeals from various discovery rulings made by Magistrate Naomi Buchwald.

I.

Wayland first contends that disqualification is mandated under DR 5–102(A) of the Code of Professional Responsibility because Harvey E. Benjamin, a member of the firm, actively participated in the negotiations involving the severance of Wayland from Shore and therefore "ought to be called as a witness on behalf of his client ..." Wayland also relies on the directive of DR 5–102(B) that a lawyer may not continue representation of a client if he or a member of his firm "may be called as a

witness other than on behalf of his client ... [and] it is apparent that his testimony is or may be prejudicial to his client."[1] In addition, Wayland argues that when he was with Shore he was a client of the Proskauer firm and that the firm's prior representation of him has a "substantial relationship" to this litigation.

Wayland's argument that Benjamin ought to be called as a witness for defendants or that he will be called as a witness for Wayland and his testimony will be prejudicial to defendants assumes that Benjamin, because of his participation in the negotiations leading up to the separation agreements between Wayland and Shore, has relevant testimony to give on a disputed issue of fact. The critical shortcoming of Wayland's position, however, is Wayland's failure to identify any disputed issue about which Benjamin (who has already been deposed in this action) could provide testimony. Wayland's primary argument is that Benjamin's testimony will be necessary to establish that it was understood during negotiations for the separation agreements that Wayland would be permitted to compete with Shore after he left the company. According to Wayland, such testimony is inconsistent with defendants' claim that the separation agreements were fraudulently induced and materially breached by Wayland's alleged competition with Shore. But defendants do not claim that Wayland's activities *after* leaving Shore were wrongful; the counterclaim is clear in alleging only that his activities while still employed at Shore were wrongful. For example, breaches of Wayland's fiduciary duties are alleged to have occurred "while Wayland was still an officer, director, employee and shareholder of Shore ..." (Answer and Counterclaims ¶ 34), the alleged material breach of the Consulting Agreement is claimed to have occurred "In or about November 1980 ..." (Answer and Counterclaims, ¶ 35), and the allegedly fraudulent representations and agreements "were made in November, 1980 ..." (Answer and Counterclaims, ¶ 62).[2] In addition, Benjamin's testimony would be unnecessary to establish Wayland's right to compete after the severance since the Consulting Agreement, the validity of which is not questioned by the defendants, on its face permits such activity:

> "You shall not jeopardize your rights to consulting fees hereunder if you compete with Shore's business, and it shall not be a breach hereunder or a conflict of interest if, in the conduct of such competing business, you establish relationships with persons and companies with whom you dealt while an employee of Shore or are dealing with as a consultant."

Finally, defendants' counsel have confirmed this interpretation of their position throughout their papers and have agreed to stipulate to it. In these circumstances, there is simply no disputed issue of fact with respect to the meaning of the agreements or their negotiation to which Benjamin ought to testify or to which his testimony would be adverse to the position of defendants.

Wayland, supported by Ocean and Oceanic Sales, next contends that Benjamin ought to be called as a witness to testify about the confidentiality agreement, entered into by Shore and Ocean during negotiations con-

---

**1.** Disciplinary Rule 5–102 of the Code of Professional Responsibility provides in full:

"DR 5–102 Withdrawal as Counsel When the Lawyer Becomes a Witness.

(A) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5–101(B)(1) through (4).

(B) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm may be called as a witness other than on behalf of his client, he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client."

**2.** It is undisputed that Wayland was employed at Shore through November, 1980.

cerning a possible joint venture, allegedly breached by Ocean. In addition, they maintain that Steven J. Stein, another member of the Proskauer firm, could provide relevant testimony about the confidentiality agreement. Again, however, no *disputed* issue of fact as to which either Stein or Benjamin would testify is identified. Indeed, at deposition Benjamin testified that he did not recall anything concerning these events beyond the basic facts revealed in the documents themselves. Moreover, there appears to be no dispute about the interpretation of the confidentiality agreement, nor about actions taken at the time of the joint venture negotiations. Wayland's further contention that Benjamin's testimony that he could not remember particular events is prejudicial to defendants because it does not exclude the possibility that Wayland's version of the facts is correct is a tortured attempt to create a dispute over facts where none appears to exist, at least with respect to Benjamin and Stein's knowledge of these matters.

Finally, Wayland contends that the Proskauer firm should be disqualified because, Wayland claims, he was formerly a client of the firm in matters substantially related to the subject matter of this litigation. Wayland bases his contention that he was a client of the firm on the claim that, prior to his separation from Shore, Proskauer represented not only Shore but also each of the Shore shareholders individually. Wayland apparently draws this conclusion from the facts that the firm handled a previous buyout of a shareholder, although the shareholder who was departing was separately represented (as Wayland was in his severance agreements), and the firm drafted and suggested amendments to the shareholders' agreement. According to Wayland, on those occasions the firm represented the shareholders of Shore jointly. However, Wayland has presented no support, and we have found none, for the proposition that a law firm which acts as counsel to a close corporation acts as counsel to individual shareholders simply by suggesting amendments to a shareholder agreement or by drafting and negotiating on the behalf of

the corporation severance agreements with departing shareholders. To the contrary, it appears that the Proskauer firm has always represented the shareholders as a group, as an alter-ego of the corporation. Wayland has pointed to no instance where the firm has represented any shareholder as an individual. Furthermore, Wayland's argument that the firm must be disqualified because it may have been exposed to confidential information from Wayland while he was employed at Shore is unpersuasive since, in the circumstances of Proskauer's representation, it is clear that the firm was representing the corporation and thus Wayland could not have reasonably believed or expected that any information given to the firm would be kept confidential from the other shareholders or from the corporation as an entity. *See Allegaert v. Perot*, 434 F.Supp. 790 (S.D.N.Y.), aff'd, 565 F.2d 246 (2d Cir. 1977). It is undisputed that the firm was retained to represent Shore as a corporation, that services were billed to and paid by the corporation, and that the firm was only consulted on corporate matters. In fact, Wayland presents no evidence that he ever consulted the firm in any capacity other than as an officer and shareholder of Shore.

II.

Wayland also appeals from various rulings made on January 26, 1982, by Magistrate Naomi Buchwald. Wayland's objections are without merit.

█ Wayland first objects to the Magistrate's decision that a memorandum prepared by one Mr. Alberts of the Proskauer firm need not be produced for Wayland's inspection. Wayland has presented no basis for overturning the finding that the document is irrelevant to any issue in this case. In light of our ruling, above, that Wayland was not a client of the firm, Wayland's contention that the documents may shed light on the parameters of the firm's prior representation of him is undercut. Wayland next contends that the deposition of Steven Stein, Esq., a member of the Pros-

kauer firm, should be taken because he may shed light on the relationship between Wayland and the firm. The purported basis of this contention is Benjamin's testimony that Stein was present for a few minutes at the conclusion of a meeting with Wayland. We agree with the Magistrate that it was improper to attempt to question Stein while he was representing Benjamin at Benjamin's deposition, and we agree with defendants that it would be ludicrous to require Stein to be deposed based on his presence at the end of a meeting when Wayland has presented no basis for believing that Stein's testimony would be relevant. Finally, Wayland appeals from the Magistrate's ruling that documents postdating Wayland's announced intention to sever his relationship with Shore are privileged. We agree with the Magistrate that Wayland's contention that Benjamin's statement that he received "new information ... from the client [Shore]," (Benjamin Affidavit of October 28, 1981) somehow constituted a waiver of the attorney/client privilege, is without merit.

\* \* \*

In sum, Wayland's appeal from the Magistrate's rulings of January 26, 1982 is denied and Wayland's motion for disqualification of defendants' counsel from participation in this case is denied. It is worth noting at this juncture that even disqualification motions brought in the utmost good faith tend to sidetrack litigation for substantial periods of time. While we do not question the sincerity of Wayland's counsel in this matter, the continued pressing of this issue through fairly lengthy and contentious memoranda, despite the constant representations on the part of defendants that they were not contesting Wayland's interpretation of the competition rights under the severance agreements, has slowed the pace of this litigation to a great degree. It is the court's hope that the resolution of this issue will serve to ensure that the litigation proceed at a more expeditious rate in the future.

It is so ordered.