**Richard A. BOBBITT, Plaintiff,**

v.

**VICTORIAN HOUSE, INC., et al., Defendants.**

No. 81 C 3022.

United States District Court, N. D. Illinois, E. D.

Aug. 23, 1982.

---

Sigi M. Offenbach, Pitler & Mandell, Chicago, Ill., for plaintiff.

John C. Stiefel, Kenneth F. Levin, Solomon, Rosenfeld, Elliott, Stiefel & Abrams, Ltd., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Richard A. Bobbitt ("Bobbitt") sues Victorian House, Inc. ("Victorian House") and its President Albert Morlock ("Morlock"), primarily seeking dissolution of Victorian House and an accounting of corporate funds allegedly misapplied by Morlock. Bobbitt has moved to disqualify defendants' attorney John C. Stiefel ("Stiefel") and his law firm (Solomon, Rosenfeld, Elliott, Stiefel & Abrams, Ltd.) from representing defendants. For the reasons stated in this memorandum opinion and order that motion is denied.

Bobbitt has owned one-half of Victorian House's outstanding shares since its inception and has been a member of its board of directors since at least July 27, 1978. Stiefel has represented Victorian House since about December 1976. Although not articulated in precisely these terms, Bobbitt's claim is dual in nature:

1. Stiefel assertedly represented the Victorian House incorporators (including Bobbitt) before the corporation was formed.

2. Bobbitt contends he later gave confidential information to Stiefel in his capacity as counsel to Victorian House.

As a result Stiefel's presence in this action allegedly constitutes a conflict of interest.

During the past several years our Court of Appeals has dealt with a number of variations on the theme of lawyer disqualification. In doing so it has stated this test for determining if a conflict of interest exists in the face of prior representation, *Novo Terapeutisk Laboratorium A/S v. Baxter Travenol Laboratories, Inc.*, 607 F.2d 186, 195 (7th Cir. 1979) (quoting *Westinghouse Electric Corp. v. Gulf Oil Corp.*, 588 F.2d 221, 225 (7th Cir. 1976)):

Initially, the trial judge must make a factual reconstruction of the scope of the prior legal representation. Second, it must be determined whether it is reasonable to infer that the confidential information allegedly given would have been given to a lawyer representing a client in those matters. Finally, it must be determined whether that information is relevant to the issues raised in the litigation pending against the former client.

First, however, it must be decided whether "prior legal representation" of Bobbitt was present at all.

■ As to the undisputed Stiefel representation—that involving Victorian House itself—the problem is relatively straightforward. Normally a corporate director talking to corporate counsel should understand anything he told that attorney was "known by the corporation." Thus there should normally be no conflict of interest when a director sues a corporation represented by its general corporate counsel, because anything the director would previously have told that attorney would ordinarily have been communicated to him as lawyer for the corporation. In other words, no conflict exists simply because there was no prior representation of the individual. As EC 5–18 of the Code of Professional Responsibility states:

A lawyer employed or retained by a corporation or similar entity owes his allegiance to the entity and not to a stockholder, director, officer, employee, representative, or other person connected with the entity. In advising the entity, a lawyer should keep paramount its interests and his professional judgment should not be influenced by the personal desires of any person or organization. Occasionally a lawyer for an entity is requested by a stockholder, director, officer, employee, representative, or other person connected with the entity to represent him in an individual capacity; in such case the lawyer may serve the individual only if the lawyer is convinced that differing interests are not present.

Analysis is somewhat more complex as to a small close corporation with only a few shareholders and directors. There it may be more difficult to draw the line between individual and corporate representation. But representing such a corporation does not inherently mean also acting as counsel to the individual director-shareholders. Rather the question must be determined on the individual facts of each case.[1]

This Court has found only a single case dealing with closely parallel facts. In *Way-*

*land v. Shore Lobster & Shrimp Corp.*, 537 F.Supp. 1220, 1223 (S.D.N.Y.1982) the court rejected a like disqualification claim in these terms:

However, Wayland has presented no support, and we have found none, for the proposition that a law firm which acts as counsel to a close corporation acts as counsel to individual shareholders simply by suggesting amendments to a shareholder agreement or by drafting and negotiating on behalf of the corporation severance agreement with departing shareholders. To the contrary, it appears that the Proskauer firm has always represented the shareholders as a group, as an alter-ego of the corporation. Wayland has pointed to no instance where the firm has represented any shareholder as an individual. Furthermore, Wayland's argument that the firm must be disqualified because it may have been exposed to confidential information from Wayland while he was employed at Shore is unpersuasive since, in the circumstances of Proskauer's representation, it is clear that the firm was representing the corporation and thus Wayland could not have reasonably believed or expected that any information given to the firm would be kept confidential from the shareholders or from the corporation as an entity. *See Allegaert v. Perot*, 434 F.Supp. 790 (S.D.N.Y.), *aff'd*, 565 F.2d 246 (2d Cir. 1977). It is undisputed that the firm was retained to represent Shore as a corporation, that services were billed to and paid by the corporation, and that the firm was only consulted on corporate matters. In fact, Wayland presents no evidence that he ever consulted the firm in any capacity other than as an officer and a shareholder of Shore.

■ At least after Victorian House was formed the situation was substantively the same as in *Wayland*, for Bobbitt looked to Stiefel as his personal counsel in only

---

1. On that score the inquiry is not whether an express agreement was reached between Bobbitt and Stiefel for individual representation. *Westinghouse Electric Corp. v. Kerr-McGee*

*Corp.*, 580 F.2d 1311, 1318–20 (7th Cir. 1978) teaches the question is whether Bobbitt could reasonably have thought Stiefel was acting as his lawyer.

three minor instances (two of them trivial indeed), none of which was in any way related to this action:

1. They had a single meeting in 1977 involving Bobbitt's general estate tax considerations (for a $40 fee).

2. Stiefel handled a medical insurance claim in July 1977, which was settled in May 1978 with Prudential Insurance.

3. About April 1979 Stiefel reviewed an apartment lease for Bobbitt (one telephone call to the lessor may have been involved).

To that extent Stiefel represented Bobbitt as an individual and Bobbitt could have expected any communications were confidential. But under *Novo Terapeutisk* an attorney should be disqualified only if matters he might have discussed with his former client would in some way be relevant to the current action. That is clearly not so here.

That leaves the claim in Bobbitt's initial affidavit that Stiefel represented the incorporators (including Bobbitt) before Victorian House's incorporation.[2] At his deposition (Tr. 39) Bobbitt shifted to the position that Stiefel was "consulted" before incorporation and another attorney actually took care of the incorporation. More importantly Stiefel's claimed consultation was only as to *corporate* matters.

Bobbitt's original affidavit also said:

In the course of this aforementioned representation, during late 1974 and 1975, Stiefel and the plaintiff met privately and during those meetings, Stiefel received confidential information covering the finances and economic goals of Bobbitt and had access to his confidential records and Stiefel participated in and was party to, various decisions concerning this confidential information.

Bobbitt was questioned about this too at his deposition (Tr. 127):

Q. Was there anything that you showed John [Stiefel] of the documents we have talked about? Was there anything in those documents that was unique, special, secret to you that was not something that Al [Morlock] knew or Nadine [Stiefel] knew?

A. My personal financial statement for one.

Shortly after that Bobbitt clarified what he meant by "secret" (Tr. 130, 131):

Q. What I am asking is were any of those papers that you gave John things that you treated as secret to you?

A. Well, they were strictly for the restaurant's business and the people who had to have them at the Bank of Ravenswood.

\* \* \* \* \* \*

Q. And you are saying there are things on your personal financial statement that you considered secret that Al [Morlock] didn't know?

A. No, that is not—Al saw them.

\* \* \* \* \* \*

A. There is nothing that I submitted to John Stiefel that I considered that was confidential other than that was our own business.

Q. Other than as related to Victorian House business?

A. Yes.

Thus Bobbitt's deposition makes plain his use of the term "confidential" was in the sense of non-public. There is no evidence whatever he discussed confidential matters with Stiefel that he expected would not be revealed to Morlock or Victorian House (in fact his testimony was precisely the opposite). Both Bobbitt's motion and his original affidavit seriously overstated the situation to Stiefel's detriment (or more accurately to defendants, for it is their right to representation of their choice that would have been impaired by a successful disquali-

---

2. Bobbitt's memoranda mix two concepts in relying on the proposition "that courts will not inquire into the *facts* of disclosure or non-disclosure of client confidences and secrets by the lawyer." *MPL, Inc. v. Cook*, 498 F.Supp. 148,

150 (N.D.Ill.1980) (emphasis in original). That applies once the lawyer-client relationship is established, but to determine the latter question a factual inquiry is of course essential.

fication motion). This Court concurs in the *Wayland* analysis and finds it fully applicable here.

### Conclusion

Well before appointment to the bench this Court had occasion to note the use of the meritless disqualification motion as a litigation tactic.[3] That trend has not abated, and in this case it has had the usual effect of diverting the litigation from attention to the merits. Bobbitt's motion to disqualify attorney Stiefel and his law firm is denied.

---

**3.** Shadur, *Lawyers' Conflicts of Interest: An* *Overview*, 58 Chi.B.Rec. 190 (1977).