**In the Matter of Warren Henry TETZLAFF, Debtor.**

**Gordon G. PARO, Plaintiff,**

v.

**Warren H. TETZLAFF, Defendant.**

Bankruptcy No. 82–02625.
Adv. No. 82–1493.

United States Bankruptcy Court, E.D. Wisconsin.

July 25, 1983.

Elizabeth Orelup, Quarles & Brady, Milwaukee, Wis., for plaintiff.

Thomas D. Kuehl, Law Offices of Alan D. Eisenberg, S.C., Milwaukee, Wis., for defendant.

### DECISION AND ORDER DENYING MOTION TO DISQUALIFY PLAINTIFF'S ATTORNEY

C.N. CLEVERT, Bankruptcy Judge.

The defendant, Warren H. Tetzlaff (Tetzlaff), has asked the court to disqualify the law firm of Quarles & Brady from continuing to represent the plaintiff, Gordon G. Paro, in this nondischargeability action. The defendant's motion cited Wisconsin Supreme Court Rule 20.22 (1982) as ground for granting the motion. SCR 20.22 is based on Canon 4 of the American Bar Association Code of Professional Responsibility and provides in pertinent part as follows:

**SCR 20.22 Preservation of confidences and secrets of a client.**

(1) Except when permitted under sub. (2), a lawyer may not knowingly:

(a) Reveal a confidence or secret of his or her client.

(b) Use a confidence or secret of his or her client to the disadvantage of the client.

(c) Use a confidence or secret of his or her client for his or her advantage or advantage of a 3rd person, unless the client consents after full disclosure.

The action out of which this motion arises is based upon a two count complaint under 11 U.S.C. §§ 523(a)(2) and (4).[1] Count I alleges that sometime prior to June of 1979, Tetzlaff fraudulently induced Paro to invest substantial time and money in a metal building construction business—which was subsequently incorporated under the name Modular Buildings, Inc. (Modular)—by misrepresenting his interest in three commercial lots. Count II, on the other hand, seeks subrogation to the claims of subcontractors that Paro may have to pay as the result of Tetzlaff's alleged misappropriation of construction trust funds contrary to § 779.-02(5) Wis.Stat.[2] Tetzlaff has generally de-

---

**1.** A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—

(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; or

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for obtaining such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive; . . .

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny; . . .

**2.** THEFT BY CONTRACTORS. The proceeds of any mortgage on land paid to any prime contractor or any subcontractor for improvements upon the mortgaged premises, and all moneys paid to any prime contractor or subcontractor by any owner for improvements, constitute a trust fund only in the hands of the prime contractor or subcontractor to the amount of all claims due or to become due or owing from the prime contractor or subcontractor for labor and materials used for the improvements, until all the claims have been paid, and shall not be a trust fund in the hands of any other person. The use of any such moneys by any prime contractor or subcontractor for any other purpose until all claims, except those which are the subject of a bona fide dispute and then only to the extent of the

nied these allegations and has filed a counterclaim alleging that Paro induced him to continue his participation in Modular by promising to purchase his apartment building and agreeing to cooperate in obtaining financing from the Small Business Administration and then failing to perform.

The affidavits supporting the defendant's motion asserted that Paro met with Attorney Ronald L. Wallenfang (Wallenfang) of Quarles & Brady in September or October of 1980 for the purpose of drafting several agreements for Modular's use in dealing with subcontractors and clients. Paro said that he spent approximately 2½ hours explaining the formation of the corporation, its business procedures, its finances, its business forms, and his role in the corporation's daily operations in order to provide Wallenfang with background information.

The brief supporting the defendant's motion cited *Koehring Company v. Manitowoc Company, Inc.*, 418 F.Supp. 1133, 1136 (E.D. Wis.1976) and *Marketti v. Fitzsimmons*, 373 F.Supp. 637, 639 (W.D.Wis.1974), which adopted the following standard for use in deciding motions to disqualify:

Absent a clear waiver of objection to potential conflicts, the undivided fidelity owed a former client requires disqualification in the subsequent situation whenever the following criteria are satisfied:

... (1) The former representation, (2) a substantial relation between the subject matter of the former representation and the issues in the later lawsuit, and (3) the later adverse representation. (citations omitted)

The plaintiff's brief and affidavits in opposition to the defendant's motion to disqualify acknowledged the applicability of the above-mentioned criteria, conceded that Quarles & Brady had previously represented Paro and Modular, but denied that Quarles & Brady had represented Tetzlaff. They also asserted that Modular engaged

Quarles & Brady for the limited purpose of developing a set of contract forms that might be used in its business.

## II

Based upon the affidavits and other evidence presented, the court has no reason to believe that Quarles & Brady has ever represented Tetzlaff. In fact, Tetzlaff's affidavits did not even claim that Quarles & Brady or Attorney Wallenfang acted as his personal counsel. The court is, therefore, compelled to find that the defendant has failed to establish the "former representation" necessary to warrant further inquiry into the possible existence of a successive conflict of interest. *Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.*, 501 F.Supp. 326, 328 (D.D.C.1980).

Plaintiff's brief correctly observed that a corporation's attorney does not automatically represent individuals connected with the corporation. (Pl. brief p. 3–4) Ethical Consideration 5–18 of the Code of Professional Responsibility underscores this point:

EC 5–18 A lawyer employed or retained by a corporation or similar entity owes his allegiance to the entity and not to a stockholder, director, officer, employee, representative, or other person connected with the entity. In advising the entity, a lawyer should keep paramount its interests and his professional judgment should not be influenced by the personal desires of any person or organization. Occasionally a lawyer for an entity is requested by a stockholder, director, officer, employee, representative, or other person connected with the entity to represent him in an individual capacity; in such case the lawyer may serve the individual only if the lawyer is convinced that differing interest are not present.

However, in cases involving closely held

---

amount actually in dispute, have been paid in full or proportionally in cases of a deficiency, is theft by the prime contractor or subcontractor of moneys so misappropriated and is punishable under s. 943.20. If the prime contractor or

subcontractor is a corporation, such misappropriation also shall be deemed theft by any officers, directors or agents of the corporation *responsible for* the misappropriation. (Emphasis added.)

corporations such as Modular[3] the question as to whether the corporation's attorney represents a stockholder could be difficult to answer. For as Judge Shadur observed in *Bobbitt v. Victorian House, Inc.,* 545 F.Supp. 1124, 1126 (N.D.Ill.1982):

> Analysis is somewhat more complex as to a small close corporation with only a few shareholders and directors. There it may be more difficult to draw the line between individual and corporate representation. But representing such a corporation does not inherently mean also acting as counsel to the individual director-shareholders. Rather the question must be determined on the individual facts of each case.

Here there were no facts to suggest that Quarles & Brady represented Tetzlaff or that Tetzlaff reasonably believed that the firm represented him;[4] thus, further inquiry, such as that described by Judge Shadur, is unnecessary. Nonetheless, it is worth mentioning that the court did not place particular significance on Tetzlaff's statement that he gave information to Wallenfang regarding his role in Modular's business; or the fact that count II requires plaintiff to prove that Tetzlaff was the person in Modular responsible for misappropriating trust funds. Quarles & Brady never represented Tetzlaff and secondly Tetzlaff's job description was undoubtedly known to Paro and the corporation and, as such certainly cannot be considered confidential.[5]

Defendant's motion to disqualify Quarles & Brady is denied.

---

3. The shares of Modular are held 50–50 by Paro and his wife and Tetzlaff and his wife, Complaint paragraph 5, Answer paragraph 1.

4. See, *Bobbitt* p. 1126 at fn. 1 citing *Westinghouse Electric Corp. v. Kerr-McGee Corp.,* 580 F.2d 1311, 1318–20 (7th Cir.1978).

5. *Bobbitt v. Victorian House,* 545 F.Supp. at 1126.