Alex ROSMAN, Plaintiff,

v.

Zvi SHAPIRO, a/k/a Zvika Shapiro, and R.S. Filtomat, USA, Inc., Defendants.

R.S. FILTOMAT, USA, INC., and Zvi Shapiro, Plaintiffs,

v.

Alex ROSMAN, Zvi Livni and Filtration, Ltd., Defendants.

Nos. 85 Civ. 7154 (JES), 85 Civ. 7236 (JES).

United States District Court, S.D. New York.

Feb. 19, 1987.

Kleban Marcus & Stiefel, New York City, for Alex Rosman; George Stiefel, of counsel.

Morris Harary, Yisraeli & Yerushalmi, New York City, for R.S. Filtomat, USA, Inc. and Zvi Shapiro; Joseph H. Weiss, of counsel.

SPRIZZO, District Judge.

In 85 Civ. 7154 (Action I), Alexander Rosman brings suit against Zvi Shapiro and R.S. Filtomat, USA, Inc., ("Filtomat") seeking, *inter alia,* an accounting of the profits of Filtomat and monetary damages. *See* Complaint in Action I at pp. 6–8. In a related action, 85 Civ. 7236 (Action II), Filtomat and Shapiro bring suit against Rosman, Zvi Livni, and Filtration Ltd., ("Filtration") for, *inter alia,* breach of contract. Presently before the Court is Rosman's motion to disqualify the attorneys representing Shapiro and Filtomat in both actions. Specifically, Rosman seeks to disqualify the law firm of Yisraeli and Yerushalmi ("Y & Y") and the attorneys who have appeared in both actions as of counsel to Y & Y, Morris Harary, Esq. and Joseph Weiss, Esq. ("of-counsel attorneys"), pursuant to Canons 4 and 9 of the ABA Code of Professional Responsibility.

■ Pursuant to a stipulation by the parties which was so-ordered by the Court, the aforementioned motion was referred to a Magistrate. The Magistrate recommended that the Court disqualify both Y & Y and the of-counsel attorneys from both actions. Filtomat and Shapiro subsequently filed objections to the Magistrate's report, and the Court has reviewed the motion pursuant to 28 U.S.C. § 636(b) (1982).[1] Accordingly,

---

1. Rosman seeks to insulate the Magistrate's recommendation from review by the Court by arguing that the motion was referred to the Magistrate pursuant to 28 U.S.C. § 636(c) rather than § 636(b). Pursuant to § 636(c)(1), a magistrate may, upon the consent of the parties, conduct all proceedings in a civil matter and order the entry of judgment in the case. When the parties consent to a reference pursuant to § 636(c), the parties may appeal that judgment directly to the court of appeals. *See* 28 U.S.C. § 636(c)(3). Moreover, the parties may not appeal to the district court unless both parties consent. *See* 28 U.S.C. § 636(c)(4). Since the parties did not specifically consent to an appeal to the district court, Rosman argues that the Court may not review the Magistrate's recommendation. The Court disagrees.

Nothing in the parties' stipulation referring the instant motion to the Magistrate indicated that the reference was pursuant to § 636(c). To insure that references to a Magistrate pursuant to § 636(c) do not occur unless the parties explicitly waive their right to have the motion determined by a district court judge, Local Rule 8 of the Southern District Rules For Proceedings Before Magistrates provides that consent forms must be signed by the parties before such a reference occurs. This consent form was never signed by the parties in this case. Thus, on the present record, the Court cannot conclude that the parties did, in fact, explicitly consent to a

the Court has reviewed all of the papers filed and has heard oral argument on the instant motion. For the reasons set forth *infra*, the Court grants Rosman's motion to disqualify Y & Y from representing Shapiro and Filtomat in either action, but the Court denies Rosman's motion to disqualify the of-counsel attorneys.

## I. BACKGROUND

### A. *The Dispute Between the Parties*

Filtration, a defendant in Action II, is an Israeli corporation engaged in the manufacture of water filters and other filtration products. It is undisputed that in July of 1984 Rosman and Shapiro entered into an agreement with Filtration ("the Agreement") for the marketing and distribution of Filtration's products in the United States. *See* Complaint in Action I at ¶ 6; Complaint in Action II at ¶¶ 13–14. This agreement provided, *inter alia*, that Rosman and Shapiro would create a corporation, Filtomat, through which Filtration's products would be distributed. *See* Complaint in Action I at ¶ 9; Complaint in Action II at ¶ 15.

In accordance with the Agreement, Rosman and Shapiro did create Filtomat, as a Delaware corporation. For the purposes of the instant motion, it is undisputed that Rosman and Shapiro are the sole shareholders in Filtomat, each owning 50% of Filtomat's shares of stock. *See, e.g.,* Complaint in Action I at ¶ 8; Complaint in Action II at Exhibit D, ¶ 2.[2]

Following the formation of Filtomat, a dispute arose between Shapiro and Filtration over the terms of the Agreement. Shapiro asserted that the Agreement provided that Filtomat had the *exclusive* right to distribute Filtration's products in several regions of the United States. *See* Complaint in Action II at ¶ 15. Filtration, on the other hand, denied that allegation.

This dispute between Shapiro and Filtration eventually led to strained relations between Shapiro and his partner Rosman. Rosman took the position that Filtration's interpretation of the Agreement was correct; that is, that Filtomat did not have any exclusive distribution rights. *See* Affidavit of Alexander Rosman ("Rosman Aff.") at ¶ 6.[3] According to Rosman, the Agreement merely provided that Filtomat would distribute Filtration's products on a consignment basis. *See* Complaint in Action I at ¶ 9.

Rosman contends that subsequent to the execution of the Agreement, he and Shapiro did attempt to negotiate with Filtration in the hopes that Filtomat could become Filtration's exclusive distributor. *See* Rosman at ¶ 6. However, Rosman claims that those negotiations broke down in August of 1985 and no such agreement was ever reached.

Both of the above-captioned actions, to which the disqualification motion relates, arise out of this dispute between Shapiro and Rosman. In Action II, Shapiro alleges that Rosman and Filtration wrongfully attempted to terminate Filtomat's exclusive distribution rights. *See* Complaint in Action II at ¶ 19. In that action, Shapiro seeks damages against Filtration for, *inter alia*, breach of contract and against Rosman for, *inter alia*, breach of his fiduciary duty to Filtomat. *See id.* at ¶¶ 29, 44. In Action I, Rosman asserts that the dispute has led to a deadlock in Filtomat. Therefore, Rosman seeks, *inter alia*, an accounting of the financial affairs of Filtomat and the appointment of a receiver. *See* Ros-

---

reference pursuant to § 636(c). The Court therefore will review the Magistrate's recommendation.

**2.** An affidavit filed with the Court by Joseph Yerushalmi on behalf of Shapiro and Filtomat implies that Rosman may not be considered a shareholder in Filtomat under Israeli law. *See* Affidavit of Joseph Yerushalmi at ¶ 4. However, counsel for Shapiro and Filtomat has since informed the Court that they would not dispute

Rosman's shareholder status for the purpose of the instant motion.

**3.** According to Shapiro, Zvi Livni, a defendant in Action II, persuaded Rosman to side with Filtration against Shapiro. *See* Complaint in Action II at ¶ 19. Zvi Livni is Rosman's brother-in-law and a shareholder, director, and general manager of Filtration. *See id.* at ¶ 4.

man Aff. at ¶ 4; Complaint in Action I at 28.

## B. *Y & Y's Involvement*

In July and August of 1985, following the execution of the Agreement, Rosman and Shapiro jointly consulted with Y & Y seeking legal advise with respect to Filtomat's contractual relationship with Filtration, the same subject which is the focus of the dispute in the two actions before the Court. According to Shapiro, although he believed that the Agreement already gave Filtomat exclusive distribution rights, he was willing to alter the existing contractual relationship between the parties if a new agreement favorable to Filtomat could be reached. *See* Affidavit of Zvi Shapiro ("Shapiro Aff.") at ¶ 8. It was in the context of Rosman and Shapiro's efforts to reach this new agreement with Filtration that Shapiro and Rosman sought legal advise from Y & Y.[4]

There is little dispute about the substance of Shapiro and Rosman's meetings with Y & Y. It is undisputed that in July of 1985 Rosman and Shapiro met with Itzhak Zisman, an attorney from Y & Y, in Tel Aviv, Israel to discuss the possibility of drafting a new agreement between Filtomat and Filtration. One possibility that was considered was the creation of a partnership agreement between Filtomat and Filtration, with Filtomat acting as Filtration's exclusive distributor.[5] *See* Shapiro Aff. at ¶¶ 9–11; Rosman Aff. at ¶¶ 7–8; Affidavit of Itzhak Zisman ("Zisman Aff.") at ¶ 4. At this meeting, it is undisputed that Rosman, Shapiro, and Zisman extensively discussed the existing contractual relationship between Filtomat and Filtration.

*See* Rosman Aff. at ¶¶ 8–10; Shapiro Aff. at ¶ 11; Zisman Aff. at ¶ 4.

In August, 1985, Rosman again met with Zisman, this time without Shapiro, to further discuss Filtomat's relationship with Filtration. *See* Rosman Aff. at ¶¶ 11–12; Shapiro Aff. at ¶ 13; Zisman Aff. at ¶ 5. At this meeting, Rosman and Zisman discussed, *inter alia*, the possibility that Filtomat could be a commissioned sales agent for Filtration rather than Filtration's partner. *See* Rosman Aff. at ¶¶ 11–12. Rosman also instructed Zisman to prepare a draft agreement between Filtration and Filtomat. *See* Rosman Aff. at ¶¶ 11–12; Zisman Aff. at ¶ 5.

Following this meeting, the relationship between Shapiro and Rosman deteriorated and, in early September, the complaints in the two instant actions were filed. After the complaints were filed, Rosman insisted on meeting with Zisman for a third time. Zisman reluctantly agreed. *See* Rosman Aff. at ¶ 16. At this meeting, Zisman refused to discuss the disagreement between Shapiro and Rosman, stating that he had seen the complaint in Action II. *See* Zisman Aff. at ¶ 6. Rosman then asked Zisman if he would testify that Shapiro had admitted at the first meeting that Rosman was a 50% shareholder in Filtomat. Zisman's affidavit establishes that he declined to so testify because he "did not wish to become involved in the litigation between the principals of [his] client, the corporation [Filtomat]," and because he believed that such testimony would be cumulative of evidence already in the record, which established Rosman's interest in Filtomat. *See* Zisman Aff. at ¶ 7; Supplementary Affidavit of Itzhak Zisman at ¶ 2.

---

**4.** Rosman and Shapiro agree that they consulted with Y & Y concerning the possibility of a new agreement with Filtration. However, Rosman contends that the goal was to enable Filtomat to obtain the exclusive distribution rights, which Shapiro now claims the Agreement gave to Filtomat. *See* Rosman Aff. at ¶¶ 6–7.

**5.** Rosman argues in his affidavit that Shapiro, Rosman and Zisman also discussed the possibility that a partnership could be created between Shapiro and Rosman, as individuals, with Fil-

tration. *See* Rosman Aff. at ¶ 8. Shapiro, however, disputes this. *See* Shapiro Aff. at ¶ 12. Since the Court has not held a factual hearing with respect to the disqualification motion, and the burden of establishing the need for disqualification is on Rosman, the Court will accept Shapiro's version of the facts. The Court notes that counsel for Rosman informed the Court at oral argument that he did not wish to have a hearing, and that he was willing to have the motion stand or fall without a hearing.

Also at that meeting, Rosman questioned Zisman as to the propriety of Y & Y's representation of Filtomat and Shapiro against him. Zisman informed Rosman that he saw no ethical problem in such representation. *See* Zisman Aff. at ¶ 7. Finally, at the conclusion of that meeting, Rosman asked for a bill for Y & Y's prior legal services. Zisman, however, refused to provide a bill, insisting that Y & Y only represented Filtomat and that Y & Y never represented Rosman as an individual. *See id.* at ¶ 8.

## II. DISCUSSION

As the above-stated facts make clear, Rosman and Shapiro jointly consulted Y & Y for legal advice concerning Filtomat's contractual relationship with Filtration. Moreover, it is clear that Y & Y now represents Shapiro against Rosman in two actions before the Court and that both actions focus on the identical issues discussed during the prior consultations. Based on these facts, Rosman seeks to disqualify Y & Y pursuant to Canons 4 and 9 of ABA Code of Professional Responsibility.[6]

Canon 4 provides that a "lawyer should preserve the confidences and secrets of a client." ABA Code of Professional Responsibility, Canon 4 (1970). At the outset, the Court rejects Shapiro and Filtomat's argument that disqualification pursuant to Canon 4 is inappropriate because Y & Y only represented the corporate entity, Filtomat, and that Y & Y never represented Rosman as an individual. For the purposes of this disqualification motion, the Court must protect Rosman's reasonable expectations of confidentiality.

Thus, the Court may find that an attorney-client relationship existed between Rosman and Y & Y if Rosman reasonably believed Zisman was acting as his counsel. *See Westinghouse Electric Corp. v. Kerr-McGee Corp.,* 580 F.2d 1311, 1318–20 (7th Cir.1978), *cert. denied,* 439 U.S. 955, 99 S.Ct. 353, 58 L.Ed.2d 346 (1978); *Glover v. Libman,* 578 F.Supp. 748, 757 (N.D.Ga. 1983); *Bobbitt v. Victorian House, Inc.,* 545 F.Supp. 1124, 1126 n. 1 (N.D.Ill.1982).[7]

It is clear that Rosman reasonably believed that Zisman was representing him. Although, in the ordinary corporate situation, corporate counsel does not necessarily become counsel for the corporation's shareholders and directors, *see Bobbitt,* 545 F.Supp. at 1126; *Stratton Group, Ltd. v. Sprayregen,* 466 F.Supp. 1180, 1184 n. 3 (S.D.N.Y.1979), where, as here, the corporation is a close corporation consisting of only two shareholders with equal interests in the corporation, it is indeed reasonable for each shareholder to believe that the corporate counsel is in effect his own individual attorney.

This is especially true in this case because both Rosman's uncontradicted affidavit, *see* Rosman Aff. at ¶ 3, and the shareholder agreement creating Filtomat, *see* Complaint in Action II at Exhibit D, demonstrate that both Rosman and Shapiro treated Filtomat as if it were a partnership rather than a corporation. In short, it would exalt form over substance to conclude that Y & Y only represented Filtomat, solely because Rosman and Shapiro chose to deal with Filtration through a corporate entity.[8]

---

**6.** The Court rejects Shapiro and Filtomat's argument that Rosman has waived any objection to Y & Y's representation in these actions. At most, there was a five week delay between the filing of the complaint in Action I and the instant motion for disqualification. Moreover, although the Court has ruled on an application for a Temporary Restraining Order in Action II, answers have not even been filed in either action. Clearly there has not been such a substantial delay in bringing this motion as to permit an inference of waiver.

**7.** Shapiro and Filtomat argue that a factual hearing is necessary to resolve this issue. The Court disagrees. Accepting all facts as alleged by Shapiro to be true, *see, e.g.,* note 5 *supra,* for the reasons set forth below, the Court concludes that Y & Y previously represented Rosman.

**8.** Moreover, as the Magistrate correctly noted, *see* Report and Recommendation at 7, the cases relied upon by Shapiro and Filtomat with respect to this issue do no more than establish the general proposition that in a close corporation, the issue of corporate versus individual repre-

■ Although Y & Y did previously represent Rosman, it does not follow that disqualification of Y & Y pursuant to Canon 4 is appropriate. Disqualification pursuant to Canon 4 is only warranted when the "attorney was in a position where he *could* have received information which his former client might reasonably have assumed the attorney would withhold from his present client." *See Allegaert v. Perot,* 565 F.2d 246, 250 (2d Cir.1977) (emphasis in original). In this case, Rosman could not have reasonably expected that any information imparted to Y & Y would have been withheld from Shapiro during the course of that representation because Y & Y represented Shapiro and Rosman jointly. Given the prior joint representation, Y & Y simply could not have possessed any information which Rosman intended to be held in "confidence" or as a "secret" from Shapiro. Therefore, disqualification of Y & Y pursuant to Canon 4 is not warranted. *See United States Football League v. National Football League,* 605 F.Supp. 1448, 1452 n. 7 (S.D.N.Y.1985); *cf., Allegaert,* 565 F.2d at 250–51.

■ Rosman also argues, however, that Y & Y should be disqualified pursuant to Canon 9. The Court agrees. Canon 9 provides that attorneys "should avoid even the appearance of professional impropriety." ABA Code of Professional Responsibility, Canon 9 (1970). In this case, the obvious appearance of impropriety stemming from Y & Y's representation of Shapiro against its former client, Rosman, is so great that the Court must disqualify Y & Y. *See Brennan's, Inc. v. Brennan's Restaurants, Inc.,* 590 F.2d 168 (5th Cir.1979).

A client reasonably expects that an attorney will remain loyal to his interests in matters on which that attorney previously represented him. That expectation is worthy of protection in this Court. *Cf. Brennan's, supra,* 590 F.2d at 172. Indeed, the well-settled ethical principle is that "[w]hen the interest of clients diverge and become antagonistic, their lawyer must be absolutely impartial between them, which ... usually means that he may represent none of them." *See* Drinker, *Legal Ethics* 112 (1953). To hold otherwise would undermine the loyalty and trust upon which the attorney-client relationship is based.[9] Therefore, Rosman's motion to disqualify Y & Y pursuant to Canon 9 is granted.[10]

---

sentation must be decided on a case by case basis. *See, e.g., Bobbitt, supra,* 545 F.Supp. at 1126; *Wayland v. Shore Lobster & Shrimp Corp.,* 537 F.Supp. 1220, 1223 (S.D.N.Y.1982). Neither of those cases, however, involved the situation presented here, *i.e.,* a close corporation, consisting of only two 50% shareholders, created solely to facilitate the transaction which is the focus of the dispute in the two instant actions. Although there does not appear to be any case directly on point, this case is more closely analogous to the cases cited by Rosman, wherein courts have disqualified counsel from representing one spouse against the other when that counsel previously served as corporate counsel to the family corporation. *See, e.g., Woods v. Superior Court of Tulare County,* 149 Cal.App.3d 931, 197 Cal.Rptr. 185 (1983); *In Re Bowman Trading Co., Inc.,* 99 A.D.2d 459, 471 N.Y.S.2d 289 (1st Dept.1984).

**9.** *Allegaert* is not to the contrary. In *Allegaert,* the plaintiff sought to disqualify the defendants' counsel on the basis of Canon 4, not on Canon 9. *See Allegaert, supra,* 565 F.2d at 247–48. Moreover, that case is factually inapposite to the instant case. In *Allegaert,* the law firm sought to be disqualified had a long-standing and con-

tinuous relationship with the defendants while the firm had only briefly performed some legal services for the plaintiff in the past pursuant to a joint venture agreement between the plaintiff and the defendants. *See id.* at 250. In addition, the plaintiff was independently represented by its own attorney during every phase of that joint venture. *See id.* Thus, unlike the instant case, in *Allegaert* there was no appearance of impropriety when, after a dispute arose between the two joint venturers, the law firm continued to represent its long-standing clients against the other joint venturer. The party seeking disqualification in *Allegaert* simply could not have reasonably expected that the law firm would remain loyal to its interests at the expense of the firm's primary clients.

**10.** The Court is not unmindful that the Second Circuit has held that courts should be "quite hesitant" to disqualify attorneys solely on Canon 9 grounds. *See, e.g., Armstrong v. McAlpin,* 625 F.2d 433, 444–46 (2d Cir.1980) (*en banc*) (quoting *Board of Education v. Nyquist,* 590 F.2d 1241, 1246 (2d Cir.1979)), *vacated and remanded on other grounds,* 449 U.S. 1106, 101 S.Ct. 911, 66 L.Ed.2d 835 (1981); *see also Gleuck v. Jonathan Logan, Inc.,* 653 F.2d 746, 748 (2d

■ Although the Court grants Rosman's motion to disqualify Y & Y, the Court can see no reason to disqualify the of-counsel attorneys. As discussed *supra,* this is not a case where there is the potential for the disclosure of confidential information. Therefore, their disqualification pursuant to Canon 4 is not appropriate. *Compare NCK Organization Ltd. v. Bregman,* 542 F.2d 128, 131–32 (2d Cir.1976). Moreover, disqualification pursuant to Canon 9 is not appropriate because there would be no appearance of impropriety if the of-counsel attorneys continued to represent Shapiro and Filtomat against Rosman. *See Brennan's, supra,* 590 F.2d at 173–74. Having had no prior attorney-client relationship with Rosman, the of-counsel attorneys owe no duty to remain loyal to Rosman's interests.

### CONCLUSION

Rosman's motion to disqualify the law firm of Yisraeli and Yerushalmi from representing Shapiro and Filtomat in 85 Civ. 7154 and 85 Civ. 7236 is granted.

Rosman's motion to disqualify Morris Harrary, Esq. and Joseph Weiss, Esq. from representing Shapiro and Filtomat in 85 Civ. 7154 and 85 Civ. 7236 is denied.

All parties shall appear before the Court for a Pre-Trial Conference on April 3, 1987 at 10:00 A.M.

It is SO ORDERED.

Cir.1981). The Second Circuit, however, has not held that disqualification may *never* be appropriate on Canon 9 grounds. Moreover, it is clear that the district court "bears the responsibility for the supervision of the members of its bar." *See Lefrak v. Arabian American Oil Co.,* 527 F.2d 1136, 1140 (2d Cir.1975) (quoting *Hull v. Celanese Corp.,* 513 F.2d 568, 571 (2d Cir. 1975)); *see also Black v. State of Missouri,* 492 F.Supp. 848, 859–60 (W.D.Mo.1980) (and cases cited therein). Where, as here, the appearance of impropriety is so great, the Court in the exercise of its supervisory powers cannot allow the situation to go uncorrected.

The Court also notes that one of the major policy considerations which underlies the Second Circuit's hesitancy to disqualify counsel, to wit, the unnecessary delay and expense created by counsel substitution, *see Bohack Corp. v. Gulf & Western Industries, Inc.,* 607 F.2d 258, 263 (2d Cir.1979), is not present in this case because the Court is not disqualifying the of-counsel attorneys. In short, weighing the needs of efficient judicial administration against the necessity of protecting the integrity of the judicial process, the Court concludes that this is one of those rare cases where disqualification is appropriate solely on Canon 9 grounds.