**Steven A. COHEN, Plaintiff,**

v.

**ACORN INTERNATIONAL LTD., Geller Partners, Incorporated, Robert E. Gillis and Jeffrey L. Geller, Defendants.**

No. 94 Civ. 6394 (SAS).

United States District Court,
S.D. New York.

Dec. 4, 1995.

members including Defendants Jeffrey Geller, an Executive Vice President of Acorn, and Robert Gillis, Acorn's Chairman and Chief Executive Officer. Mr. Gillis was also hired to act as DHC's Chairman and Chief Executive Officer.

On that same date, DHC closed its acquisition of Borden's candy division. However, by early 1994, DHC and its shareholders, Plaintiff and Acorn, became convinced that Borden had fraudulently concealed information from them. DHC hired Ropes & Gray. After numerous conversations with members of DHC's board, Ropes & Gray brought a multi-million dollar action against Borden alleging, *inter alia*, breach of contract, breach of warranty, misrepresentation and fraud.

In the ensuing days, the relationship between Plaintiff and Defendants deteriorated. During a meeting at Ropes & Gray's offices, Plaintiff indicated that he had lost faith in Gillis and wished to terminate his employment with DHC. In response, Gillis and Geller suggested a transaction under which Acorn would buy out Plaintiff's interest in DHC. Plaintiff then asked one of Ropes & Gray's attorneys to prepare documents for this transaction on his behalf. Although the attorney began drafting these documents, Acorn refused to sign a waiver consenting to Ropes & Gray's simultaneous representation of DHC and Plaintiff.

The proposed buy-out fell through, and on September 2, 1994, Plaintiff, represented by Ropes & Gray, filed suit against Defendants for securities fraud, fraud and negligent misrepresentation. Defendant Acorn now moves to disqualify Ropes & Gray as counsel. Acorn argues that in preparation for DHC's suit against Borden, Gillis and Geller had discussions with Ropes & Gray regarding, *inter alia*, their knowledge of Borden's fraud; that they expected these communications would be kept confidential; and that Acorn will be prejudiced if Ropes & Gray is permitted to represent Plaintiff.

Douglas H. Meal, Luke T. Cadigan, Ropes & Gray, for Plaintiff Steven A. Cohen.

William Dunnegan, New York City, for Defendants Acorn International, Geller Partners and Jeffrey L. Geller.

Robert E. Gillis, Palm Harbor, Florida, pro se.

## MEMORANDUM OPINION AND ORDER

SCHEINDLIN, District Judge.

Defendant Acorn International, Ltd. ("Acorn") moves to disqualify Ropes & Gray as counsel for Plaintiff Steven A. Cohen. For the reasons set forth below, Defendant's motion is denied.

### A. Factual Background

In early 1993, Deran Holding Company ("DHC") was incorporated pursuant to Delaware law. DHC was formed for the purpose of acquiring from Borden the assets of its candy division. At the time of DHC's incorporation, Defendant Acorn was its sole shareholder.

On April 8, 1993, Plaintiff Cohen purchased 60% of DHC's common stock.[1] Plaintiff was given the opportunity to designate four of seven directors to the board, and designated himself and three other individuals. Acorn designated the remaining three

### B. Discussion

█ As this Court has noted on several occasions, motions to disqualify counsel are

---

1. The DHC shareholders agreement contains "supermajority voting provisions" which require the vote of 70% of the outstanding common stock for most significant actions.

**1064**

generally disfavored. *See, e.g., Complaint of Maritima Aragua, S.A.,* 847 F.Supp. 1177, 1179 (S.D.N.Y.1994); *Clark v. Bank of New York,* 801 F.Supp. 1182, 1197 (S.D.N.Y.1992). Such motions are often made for tactical reasons, may result in unnecessary delay, and interfere with a party's right to employ counsel of its choice. *See Evans v. Artek Systems Corp.,* 715 F.2d 788, 791 (2d Cir. 1983); *Board of Education v. Nyquist,* 590 F.2d 1241, 1246 (2d Cir.1979). For these reasons, a high standard of proof is required of those seeking disqualification. *See Bennett Silvershein Associates v. Furman,* 776 F.Supp. 800, 802 (S.D.N.Y.1991).

■ In this Circuit, an attorney may be disqualified where she accepts employment "adverse to the interests of a former client on a matter substantially related to the prior litigation." *Allegaert v. Perot,* 565 F.2d 246, 250 (2d Cir.1977); *Kempner v. Oppenheimer & Co., Inc.,* 662 F.Supp. 1271, 1277 (S.D.N.Y. 1987). The purpose of this "substantial relationship" test is to "prevent any possibility, however slight, that confidential information acquired from a client during a previous relationship may subsequently be used to the client's disadvantage." *Kempner,* 662 F.Supp. at 1277.

■ Acorn's claim that it is a "former client" of Ropes & Gray is dubious. On several occasions this Court has held that a law firm does not represent the shareholder of a corporation, even a close corporation, simply by virtue of its representation of the corporation itself. *See, e.g., American Special Risk Insurance Co. v. Delta America Re Insurance Co.,* 634 F.Supp. 112, 120 n. 14 (S.D.N.Y.1986); *Wayland v. Shore Lobster & Shrimp Corp.,* 537 F.Supp. 1220, 1223 (S.D.N.Y.1982). *But see Rosman v. Shapiro,* 653 F.Supp. 1441 (S.D.N.Y.1987) (where corporation has only two shareholders with equal interests, it is reasonable for each

shareholder to believe the corporate counsel is effectively his own attorney).

Even assuming Acorn was a former client of Ropes & Gray, the Court does not need to reach the question of whether the "substantial relationship" test has been met. "[B]efore the substantial relationship test is even implicated, it must be shown that the attorney was in a position where he *could* have received information which his former client might reasonably have assumed the attorney would withhold from his present client." *Allegaert,* 565 F.2d at 250. *See also American Special Risk Insurance Co.,* 634 F.Supp. at 121 (substantial relationship test inapplicable where each client knew of the other's relationship to the law firm and had no reason to believe that their confidences would be withheld from one another).

. Acorn could not have reasonably believed that Ropes & Gray would withhold information provided by Geller and Gillis from DHC and its directors. Acorn knew that Ropes & Gray was working for DHC in its suit against Borden, and that the law firm's conversations with Geller and Gillis pertained to this action. Further, Acorn knew that Plaintiff was a member of DHC's board, and thus privy to any information Geller and Gillis provided Ropes & Gray. Because Acorn had no basis for believing that any information given to the law firm would be withheld from Plaintiff, there is no basis for disqualifying Ropes & Gray in this action. *See Wayland,* 537 F.Supp. at 1223; *Neiman v. Local 144,* 512 F.Supp. 187, 190 (E.D.N.Y.1981).[2]

Accordingly, Defendant Acorn's motion to disqualify Ropes & Gray is denied.

SO ORDERED.

**2.** Acorn contends that the Court should follow Judge Sprizzo's reasoning in *Rosman v. Shapiro,* 653 F.Supp. 1441 (S.D.N.Y.1987). *Rosman* involved an action brought by a 50% shareholder of a close corporation against the other 50% shareholder, who was represented by a law firm that had also served as counsel for the corporation. Despite finding that the law firm could not have been privy to any confidential information,

Judge Sprizzo granted plaintiff's motion for disqualification because of the "appearance of professional impropriety." *Id.* at 1446.

As the Second Circuit has noted, in the absence of any threat that a trial will be tainted, the "appearance of impropriety is simply too slender a reed on which to rest a disqualification order except in the rarest cases." *Board of Education,* 590 F.2d at 1247.