CC-2000-986                                                                    1

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Eliane Exportadora Ltd.<br>    Demandante-Peticionaria<br><br>         v.<br><br>Maderas Alfa, Inc.<br>    Demandante-Recurrida | Certiorari<br><br>2002 TSPR 41<br><br>156 DPR _____ |

Número del Caso: CC-2000-986


Fecha: 4/abril/2002


Tribunal de Circuito de Apelaciones:
                    Circuito Regional I


Juez Ponente:
                    Hon. Liana Fiol Matta

Abogados de la Parte Peticionaria:
                    Lcdo. Pedro E. Ruiz Meléndez
                    Lcdo. Jaime E. Toro Monserrate
                    Lcdo. Arturo J. García Solá


Abogados de la Parte Recurida:
                    Lcda. Maricarmen Ramos de Szendrey
                    Lcdo. Fernando Agrait




Materia: Sentencia Declaratoria




    Este documento constituye un documento oficial del Tribunal
    Supremo que está sujeto a los cambios y correcciones del proceso
    de compilación y publicación oficial de las decisiones del
    Tribunal. Su distribución electrónica se hace como un servicio
    público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Eliane Exportadora Ltd.

   Demandante-Peticionaria

   vs.                        CC-2000-986        Certiorari

Maderas Alfa, Inc.

   Demandada-Recurrida

**Opinión del Tribunal emitida por el Juez Asociado señor Hernández Denton**

San Juan, Puerto Rico, a 4 de abril de 2002.

Nos toca evaluar el alcance del Canon 21 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, en lo pertinente a la existencia de un conflicto de intereses por representación sucesiva adversa de una corporación íntima. Después del análisis correspondiente, resolvemos que, de ordinario, los tribunales no deben obviar la personalidad jurídica del cliente cuando los hechos involucren a una corporación íntima. En ese caso, el "cliente" es la corporación y sólo ante circunstancias particulares procede prescindir del ente corporativo ante un planteamiento de representación sucesiva adversa.

I

Eliane Exportadora, Ltd. -compañía dedicada a la manufactura de losas y cerámica sita en Brasil- (en adelante "Eliane Ltd.") presentó una demanda solicitando sentencia declaratoria contra Maderas Alfa, Inc. (en adelante "Alfa, Inc.") -corporación puertorriqueña dedicada a la venta de productos de plomería y materiales de construcción. En dicha demanda Eliane Ltd. alegó que entre ella y Alfa, Inc. nunca existió una relación de exclusividad bajo la Ley de Contratos de Distribución de Puerto Rico, Ley Núm. 75 de 24 de junio de 1964, según enmendada, 10 L.P.R.A. sec. 278 *et seq*. En la alternativa alegó, que aún determinándose que existió una relación exclusiva de principal-distribuidor entre las partes, medió justa causa para terminar dicha relación, ya que Alfa, Inc. no cumplió con el volumen  de venta esperado.  Por su parte, Alfa, Inc. reconvino alegando que Eliane Ltd. violó el acuerdo de exclusividad existente entre ambas y reclamó daños.

Después de varios incidentes procesales, Alfa, Inc. planteó la existencia de un posible conflicto de intereses por parte de la representación legal de Eliane Ltd., el bufete de abogados McConnell Valdés (en adelante "McConnell Valdés"). En síntesis, alegó que McConnell Valdés mantuvo una relación de abogado-cliente con varias corporaciones íntimas propiedad de los mismos accionistas de Alfa, Inc. Por lo tanto, solicitó su descalificación por alegadamente existir un conflicto de intereses en su modalidad de representación sucesiva adversa.

Posteriormente, el tribunal de instancia celebró una vista argumentativa en la que los abogados de ambas partes expusieron sus posiciones y estipularon que (1) nunca existió una relación abogado-cliente entre Alfa, Inc. y McConnell Valdés; (2) McConnell Valdés nunca rindió trabajo legal en torno a la Ley de Contratos de Distribución, *supra*; y (3) al momento de presentar la demanda, la relación de abogado-cliente entre McConnell Valdés y las corporaciones pertenecientes a los accionistas de Alfa, Inc. había terminado.

De las determinaciones de hecho del tribunal de instancia se desprende que Alfa, Inc. es una de seis (6) corporaciones íntimas dedicadas a la importación, venta y producción de materiales de construcción en Puerto Rico. Los señores Víctor González Barahona y Claudio Alonso Luelmo (en adelante "los señores González y Alonso") son los accionistas principales de dichas corporaciones, con un noventa y ocho por ciento (98%) o más de participación en cada una de ellas, siendo además los oficiales y ejecutivos de las mismas. McConnell Valdés representó a cinco (5) de las seis (6) corporaciones propiedad de los señores González y Alonso para diversos asuntos.[1] Dichas

---

[1] McConnell Valdés realizó las siguientes gestiones: (1) llevó a cabo los trámites de incorporación para Antilles Cement, Inc. -corporación que se dedica a la venta de cemento importado- y para San Antonio Maritime, Inc. -corporación que se dedica a importar cemento-; (2) gestionó el registro de marca de fábrica de Antilles Cement, Inc.; (3) gestionó un decreto de exención contributiva para la fase de producción de Mateco, Inc.; (4) asesoró a los señores González y Alonso sobre cómo lograr el menor impacto contributivo en relación con las operaciones de Mateco, Inc.; (5) representó a Mateco, Inc. en el procedimiento de certificación de la Unión General de Trabajadores ante la

representaciones legales cesaron antes de interponerse la presente demanda.  Quedó evidenciado, además, que Alfa, Inc. no ha sido cliente de McConnell Valdés y que los nueve (9) abogados de McConnell Valdés que prestaron servicios a las corporaciones de los señores González y Alonso no coinciden con los que representan a Eliane Ltd. contra Alfa, Inc. en el presente caso.

Así las cosas, el tribunal de instancia emitió una resolución descalificando a McConnell Valdés.  Oportunamente, Eliane Ltd. acudió al Tribunal de Circuito de Apelaciones, el cual confirmó la decisión del tribunal de instancia.  El foro apelativo concluyó que en el caso de una corporación íntima, la posición doctrinaria prevaleciente rechaza la ficción jurídica que separa la corporación de sus accionistas, por lo tanto, entendió que en este caso hubo una relación abogado-cliente entre McConnell Valdés y los señores González y Alonso. Resolvió además, que las representaciones anteriores y la presente están sustancialmente relacionadas porque McConnell Valdés adquirió "información sensitiva asociada con la mentalidad e ideología comercial" de los señores González y Alonso, la cual le será útil en el presente caso.

Inconforme con la determinación del Tribunal de Circuito de Apelaciones, Eliane Ltd. acude ante nos. La controversia

---

Junta Nacional de Relaciones del Trabajo, con relación a los empleados de Mateco, Inc.; (6) representó a Mateco, Inc. en dos litigios sobre reclamaciones laborales presentadas por empleados de dicha corporación.

planteada se limita a determinar en primer lugar, si la relación previa de abogado-cliente se constituyó entre McConnell Valdés y las corporaciones íntimas, o entre McConnell Valdés y los accionistas de dichas corporaciones. De esa determinación depende el análisis sobre representación sucesiva adversa.

Luego de expedir el auto solicitado y examinar las comparecencias de las partes, estamos en posición de resolver.

II

El Canon 21 del Código de Ética Profesional, *supra*, el cual regula particularmente la representación de intereses encontrados por los abogados, dispone, en la parte aquí pertinente, que:

> Un abogado no debe aceptar la representación de un cliente en asuntos que puedan afectar adversamente cualquier interés de otro cliente anterior ni servir como árbitro, especialmente cuando el cliente anterior le ha hecho confidencias que puedan afectar a uno u otro cliente, aún cuando ambos clientes así lo aprueban. Será altamente impropio de un abogado el utilizar las confidencias o secretos de un cliente en perjuicio de éste.

> Un abogado que representa a una corporación o sociedad le debe completa lealtad a la persona jurídica y no a sus socios, directores, empleados o accionistas y solamente puede representar los intereses de dichas personas cuando los mismos no vengan en conflicto con los de la corporación o sociedad.

El principio medular del Canon 21 es instrumentar el "deber de lealtad completa que le debe el abogado a su cliente". Este deber le impone al abogado dos (2) obligaciones principales: (1) la obligación de ejercer un criterio profesional independiente en defensa de los intereses del cliente; (2) y

la obligación de no divulgar los secretos y confidencias que el cliente haya compartido en el transcurso de su representación. Liquilux Gas Corp. v. Berríos, Zaragoza, 138 D.P.R. 850 (1995); Ex parte Robles Sanabria, 133 D.P.R. 739 (1993); In re Carreras Rovira y Suárez Zayas, 115 D.P.R. 778 (1984); In re Guzmán, 80 D.P.R. 713 (1958).

En particular, al aplicar las disposiciones del Canon 21 ante un planteamiento de representación sucesiva de clientes con intereses adversos, hemos resuelto que el cliente no tiene que probar que de hecho ocurrió una violación al principio de confidencialidad. Sólo se requiere que el cliente demuestre (1) que entre él y el abogado que ahora representa a la parte contraria existió una relación previa de abogado-cliente; (2) que la representación anterior está sustancialmente relacionada con la representación actual de la parte contraria; (3) y que la presente representación resulta adversa a sus intereses. In re Martínez Ramírez, 142 D.P.R. 329, 345 (1997); Ex parte Robles Sanabria, *supra*; P.R. Fuels, Inc. v. Empire Gas Co., Inc., 133 D.P.R. 112, 118-119 (1993); In re Carreras Rovira y Suárez Zayas, *supra*.

En el presente caso, se alega la existencia de un conflicto de intereses por representación sucesiva adversa en el contexto de una corporación íntima. En específico, está en controversia el primer factor a considerar, la existencia de una relación de abogado-cliente previa. Fundamentalmente, debemos determinar quién fue el cliente de McConnell Valdés; a saber:

las corporaciones íntimas <u>y</u> sus accionistas, o sólo las corporaciones.

Con respecto a este asunto, el referido Canon 21 reconoce que al representar a una corporación o sociedad, el cliente es la entidad jurídica y no sus integrantes. Esto es lo que la doctrina denomina "teoría de la entidad jurídica" ("*entity theory*"). Charles W. Wolfram, Legal Ethics, <u>Corporate-Family Conflicts</u>, 2 J. Inst. Stud. Legal Ethics 295 (1999); Note, <u>An Expectations Approach Client Identity</u>, 106 Harv. L. Rev. 687 (1993).  La teoría de la entidad jurídica atiende, particularmente, la preocupación en cuanto a la lealtad del abogado corporativo frente a la covergencia de diversos intereses por parte de los propietarios de las grandes corporaciones.  American Law Institute, <u>Restatement of the Law: The Law Governing Lawyers</u>, Proposed Final Draft No. 1, Sec. 212, pág. 693.

Sin embargo, el fundamento al que responde la teoría de la entidad jurídica se diluye en el contexto de las corporaciones íntimas; especialmente en las de pocos accionistas, como las que prevalecen en Puerto Rico.  En este contexto, de ordinario, los accionistas tienen identidad de intereses y la estructura organizacional se caracteriza por su informalidad, contrario a las corporaciones ordinarias. Lawrence E. Mitchell, <u>Professional Responsability and the Close Corporation: Toward a Realistic Ethic</u>, 74 Cornell L. Rev. 466 (1989).

No obstante lo anterior, y a pesar de que en Puerto Rico prevalecen las corporaciones íntimas de pocos accionistas, cabe puntualizar que la estructura y administración de una corporación íntima puede llegar a ser tan compleja como la de una corporación ordinaria.  En una corporación íntima pueden llegar a concurrir hasta treinta y cinco (35) accionistas, considerando que  cualquier accionista puede comprender una sucesión, una sociedad legal de gananciales, una comunidad de bienes o una sociedad.  De igual forma, nada impide que la corporación íntima se maneje por una junta de directores, se nombren oficiales y se administre con igual formalidad que una corporación ordinaria.  Carlos E. Díaz Olivo, Corporaciones, Ed. Publicaciones Puertorriqueñas, 1999, Cap. 14, pág. 327, 330.

Asimismo, en las corporaciones íntimas la relación interna es distinta a la que se observa en las corporaciones tradicionales, las cuales son mucho más estructuradas. En las íntimas, los directores y accionistas se consideran socios y asumen una posición de accionistas o directores únicamente en sus negociaciones con terceros. Liquilux Gas Corp. v. Berríos, Zaragoza, supra, citando a Mitchell, supra. Las corporaciones íntimas, además, se caracterizan por (1) tener un número reducido de accionistas, íntimamente relacionados por lazos de familia, amistad o negocios; (2) la participación activa de los accionistas en la administración y la operación de la empresa; (3) y la ausencia de un mercado para la venta de sus acciones.

Díaz Olivo, *supra*, págs. 323-324. Como norma general, en la corporación íntima se funden la función decisional-administrativa con la función riesgo-inversión, ya que los accionistas y los administradores constituyen un solo grupo, a diferencia de las corporaciones ordinarias, en las cuales estas funciones están claramente deslindadas.  Id.

Por esta naturaleza particular de las corporaciones íntimas, los tratadistas y múltiples jurisdicciones estatales han reconocido un enfoque especial para determinar quién fue el "cliente" ante un planteamiento de conflicto de intereses, en su modalidad de representación sucesiva adversa.  Se trata de una determinación de hecho que debe hacerse caso a caso. Charles W. Wolfram, Modern Legal Ethics, West Publishing Co. (1986), sec 8.3.2, págs. 422-423; American Law Institute, Restatement (Third) of the Law: The Law Governing Lawyers, Sec. 14, Cap. 2, comentario f (1998); Cohen v. Acorn International, 921 F. Supp. 1062 (S.D.N.Y. 1995); McCarthy v. John T. Henderson Inc., 587 A.2d 280 (N.J. Super. Ct. Div. 1991); Nilavar v. Mercy Health System-Western Ohio, 143 F. Supp. 2d 909 (S.D.Ohio 2001); April Broadcasting, Inc. v. Smith, Núm. 95-7664, U.S. Dist. 1996 (S.D.N.Y. 27 marzo, 1996).

Así, para determinar si entre el abogado de una corporación íntima y el accionista de ésta se constituyó una relación de abogado-cliente, hay que precisar, esencialmente, si por la naturaleza de la relación entre éstos, el abogado llegó a conocer tan íntimamente el *"modus operandi"* o manera de

administrar y hacer negocios del accionista, que se puede razonablemente concluir que el deber de lealtad trascendió el ente corporativo.

En ese caso, se entiende que la posición privilegiada en que se encuentra el abogado en cuanto a las confidencias del individuo como de la corporación, le impiden actuar posteriormente en contra de los intereses que representó.  Para llegar a esta determinación hay que examinar, por ejemplo, la naturaleza y variedad de los asuntos tratados, la amplitud de la pasada representación y la estructura organizacional y administrativa de la corporación íntima.[2]

En el caso particular de bufetes de abogados, será importante considerar si los abogados que trataron con el cliente anterior son los que están en el lado opuesto en el presente caso o si permanecen como asociados del bufete; o si por el contrario, dichos abogados ya no forman parte de éste. En cuanto a este último asunto, debemos advertir, además, que cuando la moción de descalificación incluya no sólo a un abogado, sino también al bufete al cual éste pertenezca, será

---

[2] Asimismo, se debe precisar si los servicios prestados por el abogado se han circunscrito a asuntos corporativos técnicos concretos, por un periodo de tiempo determinado, o si la representación legal de la corporación fue de duración extensa y sobre múltiples y variados asuntos; la amplitud con que dichos asuntos fueron tratados; cuán formal es la estructura administrativa de la corporación, si tiene junta de directores, si los administradores son los mismos accionistas; número de accionistas de la corporación y si todos participan en la administración; mientras más reducido el número de accionistas y mientras mayor sea su participación en la administración de la corporación, más se inclina la balanza a determinar que el abogado representó a los accionistas y a la corporación.

necesario determinar si la descalificación del abogado en particular (descalificación primaria) debe imputársele al bufete en general (descalificación imputada). *Véase,* Liquilux Gas Corp. v. Berríos, Zaragoza, *supra.*

Los factores anteriormente señalados responden al hecho de que el abogado de una corporación íntima, a pesar de que no se considere el representante legal de los accionistas, podría llegar a encontrarse en una relación de fiducia con éstos, en virtud de la relación confidencial existente entre ambos. Cacciola v. Nellhaus, 733 N.E.2d 133 (Mass. App. Ct. 2000); Skarbrevik v. Cohen, England & whitfield, 231 Cal.App.3d 692 (1991); Fasshini v. Sommers, Schwartz, Silver, Schwartz & Tyler, P.C., 309 N.W.2d 645 (Mich. App. 1981). En estas circunstancias, surge un deber de confidencias del abogado con respecto a la corporación y a los individuos como consecuencia de la interacción directa entre éstos y el abogado de la corporación íntima. Fasshini v. Sommers, Schwartz, Silver, Schwartz & Tyler, P.C., *supra.*

El caso de autos no es el primero en que reconocemos que existen circunstancias particulares en las cuales el análisis del tribunal debe superar la ficción jurídica del ente corporativo ante planteamientos de índole ético. En In re Andréu Ramírez, res. el 20 de diciembre de 1999, 99 T.S.P.R. 188, resolvimos que para propósitos del Canon 28 del Código de Ética Profesional, *supra*, los directores y oficiales de una

corporación podrían considerarse partes en un litigio, aunque la parte nominal sea la corporación que ellos dirigen.

De otra parte, en el caso de Liquilux Gas Corp. v. Berríos, Zaragoza, *supra*, este Tribunal advirtió la dificultad que presenta la identificación del cliente en el contexto de las corporaciones íntimas, debido a su particular estructura organizacional. Liquilux, *supra*, versaba sobre un conflicto de intereses en su modalidad de representación simultánea adversa de una corporación íntima.[3] El bufete de abogados que representaba a Liquilux Gas Corp. también representaba a uno de los accionistas  –Zaragoza– en una acción en su contra instada por otros accionistas –Berríos y Newell–. Éstos le reclamaron a Zaragoza resarcir los daños sufridos por la corporación.   El tribunal de instancia decretó la descalificación del referido bufete de abogados al concluir que Zaragoza podría serle responsable a los accionistas demandantes o a la corporación directamente. Por consiguiente, el bufete tendría que abogar a favor de Liquilux Gas Corp. en contra de Zaragoza, quién era también su cliente. Este Tribunal confirmó la descalificación del bufete tanto como representante legal del accionista como de la corporación.

---

[3] La determinación de si estamos ante un conflicto de intereses por representación simultánea adversa o representación sucesiva adversa es crucial.  Esto es así porque en el caso de representación simultánea adversa el abogado tiene que cumplir con un estándar más riguroso, ya que se le prohíbe en todo caso y de manera absoluta litigar contra un cliente actual, independientemente de si los asuntos están sustancialmente relacionados.  Wolfram, *supra*, sec. 7.4.1, pág. 358.

En esa ocasión resolvimos que el abogado que representa a una entidad le debe lealtad a la persona jurídica y no a sus socios y administradores. No obstante, en Liquilux, *supra*, no tuvimos que dilucidar la controversia que se plantea en el presente caso, pues no había duda de que el bufete representó tanto al accionista como a la corporación.

Cabe aclarar que en este caso no estamos descartando la personalidad jurídica de las corporaciones íntimas. De hecho, la teoría de la entidad jurídica es la prevaleciente en la mayoría de las jurisdicciones estatales.[4] En nuestra jurisdicción, por su parte, en ausencia de circunstancias particulares, el cliente es la corporación.[5]

---

[4] Véase Nilavar v. Mercy Health System-Western Ohio, *supra*, *citando a* Quintel Corp., N.V. v. Citibank, N.A., 589 F. Supp. 1235 (S.D.N.Y. 1984). Véase además: American Special Risk Ins. v. Delta America Re Insurance Co., 634 F. Supp. 112 (S.D.N.Y. 1986); Wayland v. Shore Lobster & Shrimp Corp., 537 F. Supp. 1220 (S.D.N.Y. 1982); Meehan v. Hopps, 301 P.2d 10 (1956); Cole v. Ruidoso Municipal Schs., 43 F.3d 1373 (10th Cir. 1994); April Broadcasting, Inc. v. Smith, *supra*; Hoban v. Strata Mktg., Inc., No 91-5331, U.S. Dist. 1991. (N.D.Ill. 2 oct. 1991); McCarthy v. Jhon T. Henderson, Inc., *supra*; Cohen v. Acorn International, *supra*.

[5] El Informe de Reglas de Conducta Profesional, propuesto por la Comisión Revisora del Código de Ética Profesional de Puerto Rico, junio de 2000, también adopta la teoría de la entidad jurídica cuando se trata de la representación de una organización. Además, la referida regla dispone en su inciso (d) que "[A]l comunicarse con los directores, oficiales, empleados, miembros, accionistas u otros constituyentes de la entidad, el abogado deberá explicar que su cliente es la entidad y que debe lealtad a ésta cuando sea aparente que los intereses de la entidad son adversos a los intereses de los miembros de la entidad con quienes el abogado o abogada está tratando". Esta regla propuesta corresponde sustancialmente con la Regla 1.13 del Modelo de Conducta Profesional de *la American Bar Association*.

En resumen, para concluir que existe un conflicto de intereses por representación sucesiva adversa se requiere la presencia de tres (3) factores, a saber: (1) relación previa de abogado-cliente; (2) relación sustancial entre la presente y pasada representación; (3) y que la presente representación sea adversa a los intereses del anterior cliente. Ahora, para determinar la existencia de una relación previa de abogado-cliente en el caso particular de descalificación de bufetes de abogados, en los cuales estén presentes circunstancias especiales que susciten controversia sobre la identidad del cliente en el contexto de una corporación íntima, habrá que examinar, si por la naturaleza de la relación entre el accionista de la corporación y el abogado, surgió un deber de lealtad que trascendió la persona jurídica.

Teniendo en consideración lo anterior, veamos en detalle la controversia planteada en el caso de autos. Debemos determinar si McConnell Valdés, además de representar a las corporaciones íntimas en cuestión, sostuvo una relación con sus accionistas, los señores González y Alonso, en la cual surgió un deber de lealtad que trascendió la persona jurídica. Veamos.

III

Alfa, Inc. alega que cuando se representa a una corporación íntima, la doctrina reconoce que para fines del análisis de conflicto de intereses profesionales y dentro de esta

estructura peculiar, la perfecta identidad de los intereses de la persona jurídica y sus accionistas conlleva la determinación de que hay una relación abogado-cliente con cada uno de los accionistas de la corporación. Por consiguiente, según Alfa, Inc., en este caso la relación abogado-cliente se constituyó entre los señores González y Alonso y McConnell Valdés en cada una de las representaciones anteriores.

Por su parte, el Tribunal de Circuito de Apelaciones concluyó que en el caso de <u>Liquilux Gas Corp. v. Berríos, Zaragoza</u>, *supra*, este Tribunal "adoptó la posición doctrinaria prevaleciente actual que en el caso de las corporaciones íntimas o familiares, rechaza la ficción que separa la persona jurídica de sus accionistas, reconociendo así que los derechos de ambos son, en la mayoría de los casos, idénticos e inseparables."

Como indicáramos anteriormente, el análisis para determinar quién es el cliente en un caso de conflicto de intereses en el contexto de una corporación íntima es más complejo que las propuestas anteriores. El tribunal debe ponderar la envergadura y variedad de los asuntos tratados por McConnell Valdés y la amplitud con que dichos asuntos fueron tratados. Es decir, cuánta información debió haber obtenido el abogado para realizar su labor de representación. En fin, el tribunal debe estar en posición de precisar si los abogados de McConnell Valdés tuvieron la oportunidad de conocer <u>a fondo</u> el *"modus operandi"* o manera de hacer negocios y administrar de los señores González y Alonso.

En este caso, McConnell Valdés ofreció servicios a las corporaciones de los señores González y Alonso que, en su mayoría, pueden catalogarse como técnicos, excepto por dos litigios sobre reclamaciones laborales.  Las gestiones de incorporación, así como el registro de marca de fábrica y decretos contributivos, son asuntos concretos, en los cuales la intervención del abogado se extiende por un período de tiempo determinado; hasta el momento en que se obtuvo el certificado de incorporación o decreto de exención contributiva.  La información que necesita el abogado para realizar estas gestiones es una especifica, que no requiere que el abogado se compenetre con los asuntos internos de la corporación más allá de conocer los datos concretos necesarios para la gestión particular que se le encargó.  Esta relación de abogado-cliente duró aproximadamente menos de cinco (5) años y finalizó antes de interponerse la presente demanda.  Por la naturaleza de los asuntos que McConnell Valdés atendió en este caso se desprende, además, que su intervención no fue prolongada o continúa, sino más bien fue una ocasional y limitada a asuntos determinados.

Valga recordar, además, que los nueve (9) abogados de McConnell Valdés que prestaron servicios a las corporaciones de los señores González y Alonso no coinciden con los que representan a Eliane Ltd. contra Alfa, Inc. en el presente caso. No obstante, algunos de éstos aún forman parte de McConnell Valdés.  Asimismo, es lógico suponer, aunque no se desprende claramente de los autos, que la estructura organizacional de

las corporaciones íntimas de los señores González y Alonso es informal, pues estas son dirigidas y administradas por sus dos (2) accionistas principales.

Conforme a lo anterior, consideramos que el análisis de todos los factores en conjunto revela que la relación de abogado-cliente no se extendió más allá del ente corporativo. La naturaleza y variedad de los asuntos tratados y la amplitud de la relación abogado-cliente no indican haber propiciado una relación tan estrecha entre los accionistas de las corporaciones y los abogados de McConnell Valdés que nos lleve a concluir que éste, además de representar las corporaciones, sostuvo una relación con sus accionistas de naturaleza tan estrecha que extendió el deber de lealtad más allá del ente corporativo. Por lo tanto, concluimos que a la luz de las circunstancias particulares de este caso, no hubo una relación de abogado-cliente entre los señores González y Alonso y el bufete de abogados McConnell Valdés.[6]

No obstante lo anterior, nada impide que se presente una nueva moción de descalificación de surgir o descubrirse acontecimientos que no estuvieron ante nuestra consideración en el presente caso.

---

[6] Ante el hecho de que no hubo una relación abogado-cliente previa, no procede discutir los dos (2) restantes requisitos del análisis para determinar si existe conflicto de intereses por representación sucesiva adversa; esto es, que la representación anterior está sustancialmente relacionada con la representación actual y que ésta será adversa a los intereses del cliente anterior.

En fin, este es un análisis que debe efectuarse en detalle. No podemos tomar livianamente el proceso analítico por el que debemos pasar al considerar una moción de descalificación por conflicto de intereses en su modalidad de representación sucesiva adversa. El derecho del cliente a escoger libremente al abogado de su preferencia sin que los tribunales le impongan cargas excesivas y el efecto de las normas sobre descalificación de abogado en la práctica de la profesión son asuntos que merecen nuestra cuidadosa consideración.

Por los fundamentos antes expuestos se revoca la Sentencia del Tribunal de Circuito de Apelaciones. Se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos, de forma consistente con lo aquí resuelto.

Se dictará Sentencia de conformidad.


FEDERICO HERNÁNDEZ DENTON
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Eliane Exportadora Ltd.

    Demandante-Peticionaria

    vs.               CC-2000-986       Certiorari

Maderas Alfa, Inc.

    Demandada-Recurrida

**SENTENCIA**

San Juan, Puerto Rico, a 4 de abril de 2002.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se revoca la Sentencia del Tribunal de Circuito de Apelaciones y se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos, de forma consistente con lo aquí resuelto.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo Interina. El Juez Asociado señor Rivera Pérez disiente sin opinión escrita. Los Jueces Asociados señores Rebollo López y Fuster Berlingeri no intervinieron. El Juez Asociado señor Corrada del Río no interviene.

Carmen E. Cruz Rivera
Secretaria del Tribunal Supremo Interina