per curiam:
I
Los hechos medulares del presente procedimiento disci-plinario no están en controversia por haber sido estipula-dos por las partes. Veamos.
El pasado 20 de octubre de 2003, tras realizar una au-ditoría en el municipio de Vieques (Municipio), el Contra- *32 lor del Estado Libre Asociado de Puerto Rico, Hon. Manuel Díaz Saldaña, presentó ante esta Curia una queja jurada contra el Lie. Arnaldo Báez Genoval por una posible viola-ción al Canon 21 del Código de Ética Profesional, 4 L.P.R.A. Ap. EX. El Contralor señaló en la referida queja que el licenciado Báez Genoval incurrió en una represen-tación simultánea adversa y en una representación suce-siva adversa al éste representar al Municipio en una de-manda contra quienes fueran sus representados y codemandados en el mismo pleito.(1)
El licenciado Báez Genoval admitió en su contestación a la queja(2) que en enero de 1999 asumió la representación legal del Sr. Manuel Medina Rucci y del Sr. Francisco Rivera Cruz. Respecto al señor Medina Rucci, el letrado ex-presó que, tras solicitar prórroga, contestó la demanda, pero que posteriormente se percató que el Lie. Ángel Pabón Mediavilla había asumido la representación legal de éste, por lo que presentó una moción de renuncia de representa-ción legal el 10 de mayo de 1999.(3)
En lo que concierne al señor Rivera Cruz, el licenciado Báez Genoval argüyó que contestó la demanda el 20 de noviembre de 1999 y que en ella alegó que su representado había residido en los terrenos en controversia por más de treinta años. Al año siguiente, el 30 de noviembre de 2000, el abogado querellado presentó una moción de renuncia de representación legal, la cual fue declarada “ha lugar” por *33 el tribunal “a quo” el 17 de enero de 2001. La razón articu-lada por el letrado en la referida moción fue que comenza-ría a fungir como Asesor Legal del Municipio. De hecho, éste comenzó a trabajar como asesor legal del Municipio el 9 de enero de 2001. Cabe señalar que el contrato de servi-cios profesionales suscrito por el licenciado Báez Genoval y el Municipio expiró el treinta de junio de 2001.
De los hechos relatados se deduce que el licenciado Báez Genoval comenzó a trabajar con el Municipio ocho días antes que el foro primario aceptara su renuncia a la repre-sentación legal del señor Rivera Cruz. Por lo tanto, du-rante ese breve transcurso de tiempo el licenciado Báez Genoval fue simultáneamente abogado del Municipio de-mandante y del codemandado señor Rivera Cruz.
Posteriormente, el 11 de abril de 2001, el abogado que-rellado compareció, en representación del Municipio, ante el tribunal para solicitar la desestimación sin peijuicio del caso incoado contra quienes eran sus representados. Ello en vista de que el Municipio adoptó una nueva política pública en torno al predio de terreno que ocupaban los codemandados.
A raíz de estos hechos y luego de efectuar la correspon-diente investigación, el Procurador General presentó su In-forme en donde concluyó que el licenciado Báez Genoval incurrió en una posible violación a los Cánones 21 y 38 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX. El Procura-dor General sostuvo, entre otras cosas, que el letrado incu-rrió en un potencial conflicto de intereses al comparecer al tribunal como abogado del Municipio, para solicitar la des-estimación sin peijuicio del caso incoado contra quienes fueran sus clientes.
Contrario a lo argumentado por el Procurador General, el licenciado Báez Genoval expuso en su contestación al informe que él no había violado los Cánones 21 y 38 del Código de Ética Profesional, supra, puesto que en ningún momento asesoró al Municipio sobre la causa de acción ins- *34 tada contra quienes eran sus clientes. Señaló, además, que no intervino con la aprobación y puesta en vigor de la nueva política pública delineada por la Asamblea Municipal del Municipio en torno a los predios de terreno que originaron la controversia. Finalmente, argüyó que no in-currió en un potencial conflicto de intereses al presentar la moción de desistimiento sin perjuicio, puesto que no exis-tían intereses adversos entre el Municipio y quienes eran sus representados.
Posteriormente, le ordenamos al Procurador General que presentara una querella contra el licenciado Báez Genoval. En cumplimiento con la referida orden, el Procu-rador General presentó la querella contra el letrado y le imputó dos cargos por violación a los Cánones 21 y 38 del Código de Etica Profesional, supra. Por su parte, el licen-ciado Báez Genoval reprodujo en su contestación a la que-rella los argumentos esbozados en su contestación al Informe.
Así las cosas, nombramos Comisionada Especial a la Leda. Eliadís Orsini Zayas, ex jueza del Tribunal de Pri-mera Instancia, para que aquilatara la prueba, formulara determinaciones de hechos y sometiera las recomendacio-nes que estimara pertinentes. El 5 de mayo de 2008, la Comisionada Especial sometió ante este Tribunal un ex-tenso informe. En el informe, luego de narrar los hechos previamente esbozados, concluyó que la querella instada contra el licenciado Báez Genoval debía ser desestimada ya que, a su entender, éste “nunca representó intereses en conflicto, ni opuesto [s en conflicto] a sus anteriores clien-tes, ni siquiera en grado de apariencia.”(4)
Contando con la comparecencia de ambas partes, el caso quedó sometido en los méritos. Pasamos a resolver.
*35 II
Como es sabido, el Canon 21 del Código de Ética Profesional, supra, versa sobre el tema de los intereses encontrados en la relación abogado-cliente. En lo pertinente, el referido canon dispone lo siguiente:
El abogado tiene para con su cliente un deber de lealtad completa. Este deber incluye la obligación de divulgar al cliente todas las circunstancias de sus relaciones con las par-tes y con terceras personas, y cualquier interés en la contro-versia que pudiera influir en el cliente al seleccionar su consejero. Ningún abogado debe aceptar una representación legal cuando su juicio profesional pueda ser afectado por sus intereses personales.
No es propio de un profesional el representar intereses encontrados. Dentro del significado de esta regla, un abogado representa intereses encontrados cuando, en beneficio de un cliente, es su deber abogar por aquello a que debe oponerse en cumplimiento de sus obligaciones para con otro cliente.
La obligación de representar al cliente con fidelidad incluye la de no divulgar sus secretos o confidencias y la de adoptar medidas adecuadas para evitar su divulgación. Un abogado no debe aceptar la representación de un cliente en asuntos que puedan afectar adversamente cualquier interés de otro cliente anterior ni servir como árbitro, especialmente cuando el cliente anterior le ha hecho confidencias que puedan afectar a uno u otro cliente, aún cuando ambos clientes así lo aprueban. Será altamente impropio de un abogado el utilizar las confi-dencias o secretos de un cliente en perjuicio de éste. (Énfasis suplido.)
Como se puede apreciar, el Canon 21 impone al abogado un deber de completa lealtad hacia su cliente. La finalidad de esta norma deontológica es “reglamentar la conducta profesional que, de alguna forma, pueda poner en peligro el principio de confidencialidad que caracteriza la relación fi-duciaria de abogado-cliente y de esa forma menoscabar la imagen de la justicia y la confianza que el ciudadano tiene en el sistema”(5)
*36 Hemos resuelto reiteradamente que el Canon 21 del Código de Etica Profesional, supra, preceptúa tres situaciones que los togados deben evitar, ya que representan un conflicto de intereses que quebranta el deber de lealtad e impide que el abogado ejerza una representación adecuada y transparente para su cliente. La primera de esas situaciones es la representación simultánea de clientes, en la que, en beneficio de un cliente, el letrado necesariamente tiene que defender aquello a lo cual debe oponerse en cumplimiento de sus obligaciones hacia otro cliente suyo. Ahora bien, para que dicha prohibición se active es imperativo que exista una relación abogado-cliente dual.(6) Mediante la prohibición a la representación simultánea de clientes, se busca preservar la autonomía del juicio del abogado y prevenir cualquier tipo de dilución de la fidelidad que el abogado debe a su cliente.(7) Es por ello que el abogado no puede exponer como justificación para salvar tal conflicto de interés, que no habrá de utilizar las confidencias o secretos de un cliente en perjuicio de su otro cliente.(8) Por tal razón, hemos resuelto reiteradamente que ante un potencial o actual conflicto de intereses, el togado está obligado a renunciar a ambas representaciones. (9)
De otra parte, la representación sucesiva adversa presenta un grave conflicto de intereses, pues en ésta el abogado acepta la representación de un cliente sobre asuntos que pueden afectar adversamente los intereses de un cliente anterior. Hemos establecido sobre este particular que es necesaria la existencia de una relación abogadocliente para que se active esta prohibición.(10) Al igual que *37 sucede en la representación simultánea de clientes, en este caso, el togado tampoco podrá aducir que no utilizará las confidencias de sus clientes en perjuicio de éstos. Tal pro-hibición es insoslayable, por lo que los clientes no podrán consentir a la representación conflictiva.
En In re Carreras Rovira y Suárez Zayas, 115 D.P.R. 778, 792 (1984), resolvimos que surge una presunción irrefutable de que la información confidencial provista por el cliente anterior al letrado será utilizada por este último en beneficio del nuevo cliente, cuyos intereses son antagónicos a los del cliente anterior. Dado esto, ante un potencial o actual conflicto de intereses, el abogado está obligado a renunciar a la representación legal del nuevo cliente.
Para determinar si un abogado incurrió en la representación sucesiva de intereses encontrados, es preciso analizar su conducta según el criterio de relación sustancial. De acuerdo con este criterio, el cliente sólo tiene que demostrar que la controversia legal en la que el abogado comparece en su contra está sustancialmente relacionada con la causa de acción en la que el abogado previamente le representó.(11) Es por ello que el cliente no tiene que probar que hubo una violación al principio de confidencialidad.
En resumidas cuentas, cuando un abogado incurre en una representación sucesiva adversa, el cliente tiene que demostrar que el abogado mantuvo una relación de aboga-do-cliente con un cliente que al presente tiene una contro-versia con otro cliente que él representa, que la represen-tación legal de su cliente anterior está sustancialmente relacionada con la representación profesional de su cliente actual y que la representación legal actual resulta adversa a los intereses de su cliente original. (12)
*38 Por otra parte, la tercera situación que presenta intereses encontrados surge cuando un abogado acepta la representación legal de un cliente, conociendo que su juicio profesional puede verse afectado por sus intereses personales. Dado que día a día se pueden presentar innumerables situaciones que podrían desembocar en un potencial o real conflicto de interés, es preciso que el letrado resuelva las dudas de índole ético-profesional con rigurosidad contra sí mismo.(13) Se evitan de esta forma situaciones ignominiosas para la profesión legal que socavan la confianza de la ciudadanía. Debemos puntualizar, además, que la lealtad y la confidencialidad del abogado hacia su cliente en relación con los asuntos que éste le haya consultado o con su representación, es indivisible y continúa aún después de cesar entre ellos la relaciones de abogado-cliente. (14)
Finalmente, antes de pasar a los méritos de esta quere-lla, es preciso puntualizar la relación entre el Canon 21 y el 38 del Código de Etica Profesional, supra.
El Canon 38 del Código de Ética Profesional, supra, preceptúa una máxima de suma importancia para el ordenamiento deontológico de la profesión legal. Este canon puntualiza, inter alia, que “[e)l abogado deberá esforzarse, al máximo de su capacidad, en la exaltación del honor y dignidad de su profesión, aunque el así hacerlo conlleve sacrificios personales y debe evitar hasta la apariencia de conducta profesional impropia”. (Énfasis suplido.) íd.
El referido canon establece que los abogados deben eludir aquellas situaciones que puedan aparentar *39 una conducta profesional impropia. Respecto a este particular, en In re Morell, Alcover, 158 D.P.R. 791, 811 (2003), resolvimos que un abogado tiene la obligación de evitar, tanto en la realidad como en la apariencia, la impresión de una conducta conflictiva y tiene el deber de lucir puro y libre de influencias extrañas a su gestión profesional. Por tal razón, cuando un abogado asume una representación simultánea de clientes o una representación sucesiva ad-versa que resulta en un real o potencial conflicto de inte-reses, incurre en una conducta que viola los Cánones 21 y 38 del Código de Etica Profesional, supra.(15)
III
Contrario a la determinación de la Comisionada Especial, luego de analizar cuidadosamente el expediente de la presente querella, concluimos que el licenciado Báez Geno-val incurrió en una conducta violatoria de los Cánones 21 y 38 del Código de Etica Profesional, supra. Veamos.
Surge claramente de los hechos reseñados que el licen-ciado Báez Genoval incurrió en una representación simul-tánea adversa al comenzar a trabajar como Asesor Legal del Municipio mientras era abogado del señor Rivera Cruz en el pleito en el que éste figuraba como demandado y el Municipio como demandante. Aunque el abogado quere-llado presentó una moción de renuncia a la representación legal del señor Rivera Cruz el 30 de noviembre de 2000, no fue hasta el 17 de enero de 2001 que el Tribunal de Pri-mera Instancia la declaró “ha lugar”.
En el ínterin, el 9 de enero de 2001 el letrado comenzó a trabajar como Asesor Legal del Municipio. Evidentemente el licenciado Báez Genoval representó simultáneamente intereses encontrados. Ello es así, aunque tal situación *40 haya perdurado solamente ocho días. Si el foro primario no hubiese aceptado la renuncia a la representación legal del señor Rivera Cruz o la hubiese declarado “ha lugar” más tarde, el abogado querellado habría tenido a su cargo dos representaciones simultáneas adversas.
Por su parte, la Comisionada Especial concluyó en su informe que el licenciado Báez Genoval no incurrió en una representación simultánea adversa, puesto que las repre-sentaciones de ambos clientes no resultaban conflictivas ni adversas, ya que había ocurrido un cambio de administra-ción en el Municipio, el cual establecería una nueva polí-tica pública que favorecía la posición de los demandados. No podemos endosar tal determinación.
El mero hecho de que la nueva administración del Mu-nicipio pretendía adoptar una nueva política pública que favorecía a los demandados no es excusa ni autorizaba al licenciado Báez Genoval a ser abogado de dos partes, que en ese momento todavía tenían intereses antagónicos. Por lo tanto, cabe concluir que el licenciado Báez Genoval violó los Cánones 21 y 38 del Código de Ética Profesional, supra.
En In re Vélez Barlucea, 152 D.P.R. 298 (2000), nos en-frentamos a una situación un tanto similar. En esa ocasión amonestamos al licenciado Vélez Barlucea, pues siendo Asesor Legal del municipio de Adjuntas, asesoró y ayudó en la redacción de la demanda incoada por una persona contra el municipio. Resolvimos, además, que los abogados tienen el deber de evitar conflictos de intereses potenciales. En este caso, el licenciado Báez Genoval tenía la obligación de evitar una situación que, a todas luces, evidenciaba un conflicto de intereses y una apariencia de conducta impropia.
Nos resta determinar entonces si el licenciado Báez Ge-noval incurrió en representación sucesiva adversa.
En su informe, la Comisionada Especial razonó que el letrado no incurrió en una representación sucesiva ad-versa, puesto que el licenciado Báez Genoval no llevó a *41 cabo gestión alguna contra sus clientes y compareció sola-mente al tribunal, en representación del Municipio, para desistir sin perjuicio del pleito, lo que favorecía a quienes eran sus representados.
A diferencia del razonamiento expuesto por la Comisio-nada Especial, el Procurador General argüyó que el licen-ciado Báez Genoval incurrió en representación sucesiva adversa al comparecer al tribunal para presentar una mo-ción de desistimiento, ya que ello creaba un potencial con-flicto de intereses. Señaló, además, que el abogado quere-llado asesoró legalmente al municipio sobre la demanda contra sus anteriores clientes, pues éste facturó tres horas por el estudio y la preparación del referido caso.
Al examinar el expediente del caso de autos, nos perca-tamos que el 30 de marzo de 2001 el licenciado Báez Geno-val le envió al Municipio una factura por servicios profesio-nales prestados, en donde detalla que el 12 de marzo de 2001 facturó tres horas por el estudio y análisis del caso en el que representó inicialmente a la parte adversa. Tal si-tuación es insostenible e impermisible, pues creó un actual y real conflicto de intereses.
Aunque el licenciado Báez Genoval aduce en sus escri-tos que nunca asesoró al Municipio sobre dicho caso, no podemos ignorar el hecho de que él facturó tres horas por el estudio del caso. Ello necesariamente conlleva algún tipo de servicio profesional rendido al Municipio sobre la refe-rida causa de acción en donde sus anteriores clientes eran los codemandados. Además, no importa aquí que el abo-gado querellado haya o no asesorado al Municipio sobre el referido caso, dado que surgió un conflicto de intereses.
Finalmente, es menester señalar que la comparecencia del abogado querellado al tribunal para desistir sin peijui-cio del pleito creó una apariencia de conducta profesional impropia, puesto que se presentó ante el tribunal como abogado de la parte demandante para desistir del pelito contra quienes eran sus clientes. Dicho proceder viola el Canon 38 del Código de Ética Profesional, supra.
*42 IV
Tras concluir que el licenciado Báez Genoval incurrió en una conducta violatoria de los Cánones 21 y 38 del Código de Ética Profesional, supra, procede determinar la sanción disciplinaria a imponer. Antes de disciplinar a un abogado por las violaciones cometidas a nuestro ordenamiento deontológico, es preciso considerar los factores siguientes: la buena reputación del abogado en la comunidad, su historial previo, si ésta constituye su primera falta y ninguna parte ha resultado perjudicada, la aceptación de la falta y el sincero arrepentimiento, si se trata de una conducta aislada, el ánimo de lucro que medie en su actuación, el resarcimiento al cliente y cualesquiera otras conmiseraciones, ya bien atenuantes o agravantes, que medien de acuerdo con los hechos.(16)
En vista de que el licenciado Báez Genoval goza de buena reputación en su comunidad, que es su primera falta, que sus clientes no presentaron queja alguna contra él y que ninguna de las partes resultó perjudicada por su actuación, limitamos la sanción a una censura severa, apercibiéndolo de que en el futuro deberá observar y cum-plir cabalmente las disposiciones del Código de Ética Profesional.
V
Por los fundamentos antes expuestos, censuramos seve-ramente al licenciado Báez Genoval. Apercibimos al quere-llado para que en el futuro ejerza mayor prudencia y rigu-rosidad al evaluar las situaciones que podrían generar intereses encontrados o crear una apariencia de impropiedad.

 En 1998 el municipio de Vieques presentó una demanda aduciendo que el predio de terreno donde residían los demandados era de su propiedad, mientras que los demandados aducían que habían vivido en dicho lugar por más de treinta años.

 Conviene indicar, además, que el licenciado Báez Genoval expuso en su con-testación a la queja que el Contralor, Hon. Manuel Díaz Saldaña, no tenía legitima-ción activa para presentar una queja en su contra. No obstante, éste desistió de dicho planteamiento a la luz de la jurisprudencia emitida por este Tribunal.

 La moción de renuncia de representación legal fue declarada “ha lugar” por el foro primario el 27 de mayo de 1999. Por ello, el licenciado Báez Genoval devolvió al señor Medina Rucci $200 que éste le había entregado como parte de sus honorarios. Es menester señalar que el licenciado Báez Genoval arguye, en su con-testación a la queja, que nunca obtuvo confidencias ni información privilegiada por parte del señor Medina Rucci.

 Informe de la Comisionada Especial, pág. 41.

 In re Ortiz Martínez, 161 D.P.R. 572, 579 (2004).

 In re Torres Viera, 170 D.P.R. 306 (2007).

 In re Carreras Rovira y Suárez Zayas, 115 D.P.R. 778, 789 (1984).

 Íd.; In re Concepción Suárez, 111 D.P.R. 486, 491 (1981).

 Liquilux Gas Corp. v. Berrios, Zaragoza, 138 D.P.R. 850, 859 (1995).

 In re Soto Cardona, 143 D.P.R. 50, 55-56 (2004).

 Véase In re Carreras Rovira y Suárez Zayas, supra, pág. 791.

 In re Ortiz Martínez, 161 D.P.R. 572 (2004). Véase, además, In re Carreras Rovira y Suárez Zayas, supra; Eliane Exp. Ltd. v. Maderas Alfa, Inc., 156 D.P.R. 532 (2000).

 In re Carreras Rovira y Suárez Zayas, supra. Véase, además, In re Valentín González, 115 D.P.R. 68 (1984).

 In re Carreras Rovira y Suárez Zayas, supra, pág. 785. Véanse, también: In re Guzmán, 80 D.P.R. 713, 723 (1958); Robles Sanabria, Ex parte, 133 D.P.R. 739, 745 (1993).

 In re Torres Viera, supra; In re Vélez Barlucea, 152 D.P.R. 298 (2000).

 In re De Léon Rodríguez, 173 D.P.R. 80 (2008).