ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VIII

| VÍCTOR RAFAEL RÍOS RÍOS<br><br>Parte Recurrida<br><br>v.<br><br>**ONE ALLIANCE INSURANCE CORPORATION**; BERKLEY INSURANCE COMPANY Y BERKLEY INTERNATIONAL PUERTO RICO, LLC.<br><br>Parte Peticionaria | KLCE202300957 | *Certiorari,* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2022CV00656<br><br>(508)<br><br>Sobre: Discrimen por edad Ley Núm. 100-1959 Procedimiento Sumario establecido por la Ley Núm. 2-1961 |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y el Juez Cruz Hiraldo.

Monge Gómez, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 26 de septiembre de 2023.

Compareció ante este Tribunal la parte peticionaria, One Alliance Insurance Company (en adelante, "One Alliance" o "Peticionaria"), mediante petición de *Certiorari* presentada el 31 de agosto de 2023. Nos solicitó la revocación de la *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan (en adelante, el "TPI"), el 17 de abril de 2023, notificada y archivada en autos ese mismo día. Mediante el referido dictamen, el TPI declaró No Ha Lugar una solicitud de descalificación interpuesta por One Alliance en contra de los Lcdos. Luis. N. Saldaña Román y Fernando Sabater Clavell, así como del Bufete Saldaña, Carvajal & Vélez-Rivé, P.S.C. (en adelante y en conjunto, los "representantes legales"), quienes ostentan la representación legal de la parte recurrida, Berkley Insurance Company y Berkley International Puerto Rico, LLC (en adelante y en conjunto, "Berkley" o la "Recurrida").

Número Identificador

SEN2023_____

Por los fundamentos que expondremos a continuación, se *expide* el auto de *certiorari* y se *confirma* la *Resolución* recurrida.

**I.**

Los hechos del presente caso se originaron con la presentación de una "**Querella**" por parte del Sr. Víctor Rafael Ríos Ríos en contra de One Alliance y otros codemandados desconocidos, fundamentada en una alegado despido injustificado, actuaciones constitutivas de discrimen en el empleo y violaciones a la Ley Núm. 379 del 15 de mayo de 1948, conocida como la "Ley para Establecer la Jornada de Trabajo", 29 LPRA sec. 282 *et seq*. Luego de varios trámites procesales impertinentes, el 12 de julio de 2022, el señor Ríos Ríos presentó "**Moción Solicitando Emplazamientos a Nombre de Berkley Insurance Company; Berkley International Puerto Rico, LLC**". Mediante la misma, expuso que durante el descubrimiento de prueba iniciado en el caso pudo identificar que la compañía aseguradora de One Alliance era Berkley, por lo que solicitó se expidieran los correspondientes emplazamientos y se permitiera la presentación de una enmienda a la "**Querella**".

Así las cosas, el 8 de agosto de 2022, el foro primario ordenó la expedición de los emplazamientos y convirtió el pleito a uno ordinario, entre otras cosas. El 17 de agosto de 2022, Berkley presentó "**Contestación a la Querella *Enmendada***". Alegó afirmativamente que emitió la póliza de seguros denominada *Management Liability Insurance* número 23-00009436/00 a nombre de One Alliance, con período de vigencia de 23 de agosto de 2021 a 1 de febrero de 2022. Sostuvo que el límite de responsabilidad de la póliza era hasta $2,000,000.00 y sujeto a todos los términos, limitaciones, condiciones, condiciones precedentes y exclusiones allí establecidas. Asimismo, especificó que las cubiertas tenían un retenido de $25,000.00. No obstante, planteó que la Póliza no cubría todas las causas de acción contenidas en la "**Querella Enmendada**".

Específicamente, expuso que la Exclusión A de la Póliza era de aplicación, razón por lo cual Berkley denegaría cubierta por cualquier y toda alegación y reclamo del querellante relacionado a daños físicos. Asimismo,

expuso que la Exclusión C también es de aplicación, por lo que denegaría cubierta por cualquier reclamo relativo a incumplimiento del contrato de empleo del querellante. De igual manera, planteó que la Exclusión I de la Póliza también aplicaba y, por tanto, cualquier alegación relacionada con la Ley Núm. 379 de 15 de mayo de 1948, *supra*, no estaba cubierta.

El 27 de septiembre de 2022, One Alliance presentó una "**Solicitud de Descalificación**". Argumentó que los representantes legales habían radicado trece (13) demandas en contra One Alliance, en las cuales le imputaron a ésta incumplimiento de contrato y mala fe. Aludió al pleito presentado bajo el caso PR Asset Portfolio 2013-1 International, LLC v. One Alliance Insurance Corporation, Caso Núm. SJ2019CV09195, ventilado ante el Tribunal de Primera Instancia, Sala Superior de San Juan. Sostuvo que en dichos casos los representantes legales hicieron graves imputaciones sobre un presunto patrón de prácticas desleales y atropellos, falta de capacidad para poder responder con sus obligaciones y aludir a que la situación económica y solidez financiera de One Alliance era precaria.

Expresó que dichas expresiones eran violatorias del Artículo 27.070 de la Ley Núm. 77 de 19 de junio de 1957, según enmendada, conocida como el "Código de Seguros de Puerto Rico", 26 LPRA sec. 2707, renumerado como el Artículo 27.080. Especificó que las cláusulas de la Póliza exigían una participación de Berkley en la defensa de una reclamación en contra de One Alliance. Asimismo, expuso que Berkley controlaba las determinaciones sobre la defensa de la Peticionaria. A la luz de lo anterior, arguyó One Alliance que la comparecencia de los representantes legales constituía al menos un potencial o una apariencia de conflicto de intereses que ameritaba su descalificación, a tenor con los Cánones 21 y 38 de los de Ética Profesional, *infra*.

Por su parte, Berkely presentó "**Oposición a 'Solicitud de Descalificación'**". Como primer argumento, expresó que One Alliance carecía de legitimación activa para solicitar la descalificación, puesto que los representantes legales no fueron abogados de la Peticionaria en los

trece (13) casos a los que hizo alusión. Asimismo, esgrimió que PR Asset Portfolio no formaba parte del caso de epígrafe y que actualmente los representantes legales no ostentaban la representación de dicha parte en aquel pleito. Finalmente, expuso que dicho caso previo no se relacionaba con el de autos. Añadió que en el caso de autos Berkley se podía considerar una parte adversa a One Alliance, puesto que había invocado como defensas que existían varias condiciones de la Póliza que excluían cubierta para varios remedios, partidas y reclamaciones de la "**Querella Enmendada**". Así pues, aludió a que la representación sucesiva adversa se refería a que los abogados hayan representado en algún momento a la parte que invoca el conflicto.

En cuanto a la alegación de One Alliance a los efectos de que los representantes legales controlarán la defensa de la Peticionaria, expuso que las disposiciones de la Póliza a las que se hicieron referencia únicamente regulan cómo una aseguradora manejará su participación cuando uno de sus asegurados sea demandado, esto con el fin exclusivo de evaluar si eventualmente cubrirá o no cualesquiera de los daños reclamados. Por tanto, fue su apreciación, que el acceso a información que tendrá Berkley en este caso es la misma que tendría cualquier otra aseguradora demandada. Esbozó que los hechos de los casos eran distintos y que One Alliance falló en probar desventaja indebida alguna.

Destacó que la Póliza no incluía el conocido término *duty to defend*, lo cual implica que la aseguradora está obligada a proveer representación legal al asegurado, así como asumir los gastos del litigio. De hecho, arguyó que One Alliance estaba en la libertad de escoger su propia representación legal y la controlaba completamente. Asimismo, aclaró que los representantes legales nunca advinieron en conocimiento de información confidencial o privilegiada durante el litigio presentado en contra de One Alliance. En suma, planteó Berkley que los representantes legales no son ni nunca han sido abogados de One Alliance, por lo cual, nunca ha existido una relación abogado-cliente entre ellos y esta última.

Presentadas las correspondientes réplica y dúplica, el TPI emitió *Resolución* el 17 de abril de 2023, notificada y archivada en autos ese mismo día, mediante la cual declaró No Ha Lugar la solicitud de descalificación. El foro primario basó su determinación en el hecho de que entre One Alliance y los representantes legales nunca ha existido una relación abogado-cliente. Asimismo, expuso el foro *a quo* que las acciones presentadas por estos últimos en contra de la Peticionaria no estaban relacionadas con las controversias laborales que se ventilan en el caso de epígrafe. Así pues, entendió el TPI que los perjuicios alegados por One Alliance, si no se concedía la solicitud de descalificación, no cumplían con los criterios establecidos en nuestra jurisdicción para adjudicar este tipo de petitorio.

Inconforme, la Peticionaria presentó **"Solicitud de Reconsideración de Resolución sobre Descalificación".** Posteriormente, Berkley presentó **"Oposición a 'Solicitud de Reconsideración de Resolución sobre Descalificación'"**. Así las cosas, y posterior a la presentación de las correspondientes réplica y dúplica, el foro de instancia emitió *Resolución* mediante la cual declaró No Ha Lugar la solicitud de reconsideración. Dicho dictamen fue notificado y archivado en autos el 18 de agosto de 2023.

Aún insatisfecha, One Alliance presentó el recurso de *certiorari* que nos ocupa. Le imputó al foro primario la comisión de los siguientes errores:

> Erró grave y manifiestamente el Honorable Tribunal de Primera Instancia al no ordenar la descalificación del Bufete Saldaña, Carvajal & Vélez Rivé y sus abogados, Lcdo. Fernando- Sabater y Lcdo. Luis M. Saldaña por un potencial conflicto de intereses en la representación legal sucesiva conforme a los Cánones 21 y 38 del Código de Ética Profesional.

> Erró grave y manifiestamente el Honorable Tribunal de Primera Instancia al no ordenar la descalificación del Bufete Saldaña, Carvajal & Vélez Rivé y sus abogados, Lcdo. Fernando- Sabater y Lcdo. Luis M. Saldaña por una violación a los Cánones 15 y 38 del Código de Ética Profesional y al Código de Seguros de Puerto Rico.

El 11 de septiembre de 2023, Berkley presentó "**Memorando en Oposición a la Expedición del Auto de *Certiorari*"**.

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II.**

Como es sabido, "los procedimientos de descalificación de abogados no constituyen de por sí acciones disciplinarias sujetas a la jurisdicción exclusiva del Tribunal Supremo". Oficina para Reglamentación de la Industria Lechera v. El Farmer, Inc., 204 DPR 229, 241 (2020). *Véase* K-Mart Corp v. Walgreens de PR, Inc., 121 DPR 633, 637-638 (1988); Liquilux Gas v. Berrios, 138 DPR 850, 864 (1995). La descalificación "es una medida preventiva para evitar posibles infracciones a los Cánones de Ética Profesional … [y] funge como un 'mecanismo para asegurar la adecuada marcha de un litigio evitando los actos disruptivos provenientes del abogado'". Oficina para Reglamentación de la Industria Lechera v. El Farmer, Inc., *supra*, pág. 241 (*citando a* R. Hernández Colón, Práctica Jurídica de Puerto Rico: derecho procesal civil, 6ta ed., San Juan, Ed. Lexis Nexis, 2017, pág. 82); *véase*, K-Mart Corp v. Walgreens de PR, Inc., *supra*, pág. 637. En ese sentido, "los jueces tienen la potestad de descalificar a un abogado si ello resulta necesario para lograr una solución justa, rápida y económica de los pleitos". Meléndez Vega v. Caribbean Intern News, 151 DPR 649, 661 (2000). Particularmente, "la descalificación puede otorgarse con el fin de: (1) prevenir una violación a cualquier de los Cánones del Código de Ética Profesional o (2) evitar actos disruptivos de los abogados durante el trámite de un pleito". Oficina para Reglamentación de la Industria Lechera v. El Farmer, Inc., *supra*, pág. 241.

El Tribunal Supremo ha dispuesto que "[a]l evaluar lo sustantivo de la procedencia de una descalificación, los tribunales deben hacer un análisis de la totalidad de las circunstancias 'para valorar si la actuación del abogado constituye un 'acto disruptivo' o si tiene el potencial de desembocar en una violación de los Cánones del Código de Ética Profesional'". Íd., pág. 242. Para ello, se establecen los siguientes factores: "(1) si quien solicita la descalificación tiene legitimación activa para invocarla; (2) la gravedad de la posible violación ética involucrada; (3) la

complejidad del derecho o los hechos pertinentes a la controversia y el *expertise* de los abogados implicados; (4) la etapa de los procedimientos en que surja la controversia sobre descalificación y su posible efecto en cuanto a la solución justa, rápida y económica del caso, y (5) el propósito detrás de la descalificación, es decir, si la moción se está utilizando como mecanismo para dilatar los procedimientos". Íd., págs. 242-243; *véase*, Job Connection Center v. Sups. Econo, 185 DPR 585, 597-598 (2012); Liquilux Gas v. Berrios, *supra*, págs. 864-866.

Además, "el juez que atiende una moción de descalificación presentada por la parte adversa deberá analizar si la continuación de la representación legal le causará perjuicio o desventaja indebida a quien la solicita". Job Connection Center v. Sups. Econo, *supra*, pág. 598. De igual forma, "[e]l tribunal deberá sopesar, además, el derecho que le asiste a todo ciudadano de escoger con libertad el abogado que lo represente". Otoña v. Vélez, 141 DPR 820, 828 (1996).

Cabe recordar que la determinación de descalificar a un abogado por el foro adjudicador es una determinación de derecho ejercida dentro del marco de discreción de sus funciones en el manejo procesal de un caso. Por tal razón, los tribunales apelativos no debemos sustituir nuestro criterio en el ejercicio de esa discreción, salvo en casos en que ese foro incurra en arbitrariedad o craso abuso de discreción. Meléndez v. Caribbean Int. News, *supra*, pág. 664.

En lo pertinente, el Canon 21 del Código de Ética Profesional, 4 LPRA Ap. IX, C. 21, describe las circunstancias que pueden configurar un conflicto de interés que impide a un abogado representar a un cliente determinado. Es decir, les impone a los miembros de la profesión legal el deber de lealtad y fidelidad hacia el cliente al evitar incurrir en la representación de intereses encontrados. *In re* Rafucci Caro, 206 DPR 589, 608 (2021). Por su parte, el Canon 38 del Código de Ética Profesional, 4 LPRA Ap. IX, C. 38, establece que el abogado deberá evitar hasta la apariencia de conducta profesional impropia.

La obligación de representar al cliente según esa lealtad que le impone el Canon 21, *supra*, a todo togado incluye, entre otras cosas, "ejercer un criterio profesional independiente y desligado de sus propios intereses y no divulgar los secretos y las confidencias que el cliente haya compartido durante el transcurso de sus representaciones pasadas y presentes". Otaño v. Vélez*, supra*, págs. 825-826.

El Canon 21, *supra*, le impone a todo abogado y abogada el deber de evitar tres situaciones básicas: (1) asumir la representación legal de una persona cuando a su juicio el ejercicio de esa representación pueda verse afectado por sus expectativas o intereses personales; (2) aceptar la representación legal simultánea de dos clientes distintos con intereses contrapuestos; y (3) aceptar la representación de un cliente en asuntos que puedan afectar adversamente los intereses de un cliente anterior.

En lo aquí atinente, el referido Canon 21 proscribe expresamente que el abogado incurra en una representación simultánea o sucesiva adversa. El fin ulterior es garantizar que la información personal y profesional que el cliente entregó antes o que ahora entrega a su abogado no será utilizada en su contra en el nuevo escenario en que ese mismo abogado tiene la representación de otra parte antagónica o potencialmente antagónica en un pleito simultáneo o posterior. Íd., pág. 826; Liquilux Gas v. Berrios, *supra*, pág. 859.

Ahora bien, debe quedar claro que el Canon 21, *supra,* no impide la representación sucesiva o simultánea de dos clientes por un mismo abogado ante la total ausencia de un posible conflicto de intereses entre ambas representaciones. Otaño v. Vélez, *supra*, pág. 827. La doctrina sobre la representación sucesiva adversa se refiere a la descalificación del abogado individual que, luego de representar a un cliente intenta representar a otro con intereses adversos. Robles Sanabria*, Ex Parte,* 133 DPR 739, 748 (1993).

Este tipo de conflicto se configura cuando un abogado representa a un cliente en un asunto que está **sustancialmente relacionado** con otro asunto en el cual representó a un **cliente anterior** y los intereses de ambos

son adversos. *In re* Soto Aguilú, 202 DPR 137, 144 (2019). "Después de todo, los abogados no solo deben evitar el conflicto de intereses actual, sino también el potencial." *In re* Meléndez Figueroa, 203 DPR 18, 22 (2019). Bajo dicha premisa, el cliente no tiene que probar que hubo una violación al principio de confidencialidad. *In re* Rafucci Caro, *supra*, pág. 610.

> Solo se requiere que se demuestre que el abogado mantuvo una relación de abogado-cliente con una persona que al tiempo presente tiene una controversia con otra persona que él representa; que la representación legal de su cliente anterior está sustancialmente relacionada con la representación profesional de su cliente actual, y que la representación legal actual resulta adversa a los intereses de su cliente original. Finalmente, este conflicto no se subsana solo porque el letrado alegue que no utilizará las confidencias de sus clientes en perjuicio de estos. Íd.

En P.R. Fuels, Inc. v. Empire Gas Co., Inc., 133 DPR 112 (1993), el Tribunal Supremo amplió la doctrina prevaleciente sobre la representación sucesiva adversa para atender posibles conflictos de intereses de bufetes o grupos de abogados. Así, la doctrina de la descalificación imputada autoriza, en ciertas circunstancias, la descalificación de todo un bufete o grupo de abogados si uno o más de sus integrantes está personalmente descalificado a raíz de un conflicto de intereses. La descalificación personal se denomina "descalificación primaria" y la de los demás miembros del bufete o agrupación se denomina "descalificación secundaria". Eliane Exp. Ltd. v. Maderas Alfa, Inc., 156 DPR 532, 543 (2002). El objetivo principal de esta doctrina es "proteger al cliente que acude a un bufete o grupo de abogados contra violaciones vicarias de las reglas sobre conflictos de intereses". Robles Sanabria*, Ex Parte, supra*, pág. 749. Los criterios a aplicarse en estas situaciones son esencialmente los mismos de la descalificación individual.

Entre los factores a considerar para evaluar una situación de representación múltiple adversa, se destacan: (1) el grado en el cual los intereses de los clientes difieren; (2) la naturaleza de la representación; (3) la probabilidad de que el abogado sea influenciado por uno de los clientes; y (4) la extensión en que los intereses de los clientes puedan ser afectados de quedar influenciado el abogado por alguno de ellos. *In re* Carreras

Rovira y Suárez Zayas, 115 DPR 778, 790 (1984). Por lo dicho, el conflicto de intereses por razón de representación múltiple debe ser examinado a la luz del criterio de impropiedad, sin necesidad de que se aporte prueba de una violación ética como tal. Íd., pág. 792.

Por otro lado, el Canon 15 del Código de Ética Profesional, 4 LPRA Ap. IX, C. 15, dispone la conducta que debe observar la clase togada respecto a los testigos y los litigantes. En lo pertinente, dicho Canon establece:

> Un abogado debe tratar a los testigos y litigantes adversarios con respeto y consideración. No debe actuar inspirado por la animosidad ni por los prejuicios de su cliente ni debe permitir que éste dirija el caso ni que se convierta en el dueño de la conciencia del abogado.
>
> Será impropio utilizar los procedimientos legales en forma irrazonable o con el fin de hostigar la parte contraria. Íd.

De conformidad con lo anterior, se ha resuelto que los abogados tienen la obligación de defender la causa de su cliente con gran vigor, energía y vehemencia, pero siempre evitando ser irrespetuoso o imprudente. *In re* Feliciano, 198 DPR 369, 381 (2017). "Es decir, los abogados como 'actores principales en la litigación, deben ejercer, al máximo de sus facultades, el deber de cortesía, respeto y consideración que les impone el mencionado canon'". Íd. (citando a *In re* Irisarri Castro, 172 DPR 193, 210 (2007)).

**III.**

Nos corresponde determinar si el TPI incidió al denegar la solicitud de descalificación interpuesta por One Alliance.

En su primer señalamiento de error, la Peticionaria básicamente reprodujo los mismos planteamientos esgrimidos ante el foro primario. Específicamente, One Alliance señala que, si bien es cierto que los representantes legales nunca han sido sus abogados, este Tribunal debía analizar la relación existente entre la representación legal de la aseguradora y el asegurado. A su entender, sostiene que se configura una relación abogado-cliente, no en virtud de un contrato de representación legal, sino en virtud del contrato de seguro habido entre las partes. Sobre el particular, argumenta que los representantes legales controlarán la

defensa de One Alliance, como abogados de Berkley. Para respaldar su teoría cita una serie de casos del Estado de California. Veamos.

Para disponer efectivamente de dicha controversia, es imprescindible que evaluemos si a base de la totalidad de las circunstancias presentes en el caso, la actuación de los representantes legales constituye un acto disruptivo o si tiene el potencial de desembocar en una violación de los Cánones del Código de Ética Profesional. Primeramente, no vemos cómo el hecho de que los representantes legales sean abogados de Berkley en el caso de autos configure un acto disruptivo por éstos haber tenido una relación abogado-cliente con partes opuestas a One Alliance en varios litigios. La mera radicación de pleitos en contra de la Peticionaria no puede interpretarse como una barrera para que los representantes legales puedan continuar con su relación profesional con Berkley. Más aún cuando en dichos litigios éstos no representaban a One Alliance. No vemos cómo bajo dicho escenario se le crea una desventaja indebida a la Peticionaria.

Analicemos, pues, si en el presente caso se configura un potencial conflicto de intereses, en contravención con las disposiciones del Canon 21 de Ética Profesional, *supra*.

Según hemos adelantado, el aludido Canon 21, *supra*, le impone a todo togado la obligación de ejercer un criterio profesional independiente y desligado de sus propios intereses, y de no divulgar los secretos y las confidencias que el cliente haya compartido durante el transcurso de sus representaciones pasadas y presentes. Por ello, es norma reiterada que el Canon 21 proscribe expresamente que un abogado incurra en representación simultánea o sucesiva adversa. Bajo este último escenario, un abogado representa a un cliente en un asunto que está **sustancialmente relacionado** con otro asunto en el cual representó a un **cliente anterior** y los intereses de ambos clientes son adversos.

One Alliance sostiene que en el caso de autos Berkley le provee representación y controla su defensa, bajo las disposiciones de la Póliza. Sobre el particular, la Peticionaria arguye que dicha representación legal

es una indirecta, a la luz de los términos del aludido contrato de seguro. Es decir, One Alliance argumenta que la relación abogado-cliente habida entre los representantes legales y ella es una *sui generis* que se configura por la naturaleza del contrato de seguros suscrito entre las partes. No nos convence dicha apreciación.

No podemos olvidar que la controversia se centra en una alegación de representación sucesiva adversa que, en primer término, requiere que haya existido una relación abogado-cliente entre quien alega la existencia del conflicto y los abogados que se pretenden descalificar. Sin embargo, el expediente es claro en cuanto a que los representantes legales nunca han sido abogados de One Alliance. Ni antes del presente litigio, ni en la actualidad existe una relación de fiducia que pudiera generar un conflicto de interés patente o potencial. De hecho, el récord refleja que la única relación que existía entre los representantes legales fue con PR Asset Portfolio en el pasado y actualmente, con Berkley. Ciertamente, conforme arguye Berkley, la doctrina de representación sucesiva adversa requiere, como requisito *sine qua non*, que los abogados hayan representado en algún momento a la parte que invoca el conflicto. No podemos perder de vista que lo que se busca preservar al invocarse un conflicto de interés por relación sucesiva adversa es el deber de confidencialidad que el abogado debe a sus clientes anteriores, y que lo divulgado en confidencia por un cliente anterior no sea utilizado en contra de éste en una representación posterior. Lo anterior sencillamente no surge con las relaciones antes discutidas.

Por otro lado, tampoco existe relación alguna entre dichos pleitos en los que los representantes legales mantenían una relación abogado-cliente con partes adversas a One Alliance y el pleito de epígrafe. Tal y como lo expuso la Peticionaria, dichos litigios estaban predicados en presuntas violaciones al Código de Seguros de Puerto Rico, mientras que el caso que nos ocupa versa sobre una reclamación laboral en contra de One Alliance y en la que se acumuló a Berkley como aseguradora de esta última. Acoger la teoría de la Peticionaria equivaldría a prohibir que unos abogados y la

firma legal a la que pertenecen puedan litigar sucesivamente contra una parte contra la que hayan litigado en pleitos anteriores. Nótese que, en el caso de autos, Berkley invocó una serie de defensas y sostiene que la Póliza no provee cubierta para ciertas reclamaciones que el querellante esgrimió en contra de One Alliance, como su antiguo patrono, por lo que entre las partes aquí comparecientes existen argumentos opuestos que requerirán una adjudicación en los méritos por parte del foro primario.

En cuanto a la teoría esgrimida por la Peticionaria relacionada con que este Tribunal debe interpretar que existe una relación abogado-cliente entre ésta y los representantes legales, por virtud de la Póliza, concluimos que carece de méritos. Nos explicamos.

No podemos perder de perspectiva que la alegada violación o potencial violación que invoca la Peticionaria está predicada en las disposiciones del Canon 21 de Ética Profesional, *supra*, bajo la modalidad de representación sucesiva adversa. Por tanto, aún si entendiéramos que actualmente existe una relación abogado-cliente entre One Alliance y los representantes legales como consecuencia del contrato de seguros en controversia, no se configuran los elementos necesarios que nuestro ordenamiento ha establecido para probar dicho tipo de conflicto, pues el mismo está fundamentado en la existencia de una relación abogado-cliente anterior con quien alega la existencia del conflicto. Según hemos adelantado, One Alliance y los representantes legales **nunca** han tenido este tipo de relación de fiducia, por lo que no se configura el elemento inicial que se debe establecer para reclamar la existencia del conflicto.

Aun así, al analizar las disposiciones contractuales de la Póliza, somos de la opinión de que la defensa de One Alliance no es controlada exclusivamente por Berkley. Adviértase que, si bien es cierto que, como parte de sus deberes contractuales, la Peticionaria tiene que cumplir con proveer cierta información relacionada con la defensa del caso o consultar con Berkley antes de arribar a un acuerdo transaccional, no es menos cierto que dicho contrato también prohíbe que la aseguradora pueda transigir un pleito sin el consentimiento de One Alliance. Igualmente, es claro que la

Peticionaria escogió su propia representación legal, lo cual, se manifiesta como un indicador adicional de que Berkley no controla un cien por ciento la defensa de One Alliance, como parece indicar esta última. De hecho, coincidimos con Berkley a los efectos de que las disposiciones de la Póliza a las que se hicieron referencia únicamente regulan cómo una aseguradora manejará su participación cuando uno de sus asegurados es demandado, esto con el fin de evaluar si eventualmente cubrirá o no cualesquiera de las reclamaciones incoadas. No se cometió el primer error.

De otra parte, sostiene la Peticionaria que el TPI cometió error al no ordenar la descalificación de los representantes legales, pues se configura una violación al Canon 15 de Ética Profesional, *supra*. No nos convence dicha postura.

Conforme hemos establecido, el referido Canon regula la conducta que debe observar la clase togada respecto a los testigos y los litigantes. One Alliance arguye que procede la descalificación de los representantes legales por, presuntamente, efectuar una serie de imputaciones sobre críticas maliciosas y en detrimento de su situación económica en unos pleitos que en nada están relacionados con el caso de autos. Si One Alliance entiende que dichas expresiones son violatorias del aludido Canon, debió entonces presentar su solicitud en dichos pleitos. Recuérdese que el mecanismo de la descalificación se utiliza para asegurar la adecuada marcha de un litigio y lograr una solución justa, rápida y económica del mismo. No puede la parte promovente de dicha petición pretender que se penalice a la parte contraria utilizando la descalificación de su abogado, por expresiones o señalamientos que tan siquiera se han efectuado dentro del mismo caso. A pesar de lo anterior, entendemos que las expresiones a las que hace referencia One Alliance no son fundamento suficiente para que los representantes legales no puedan defender los intereses de Berkley en el caso de autos, a la luz de lo dispuesto en el Canon 15 de Ética Profesional, *supra*. Tampoco se cometió el segundo error.

En fin, concluimos que en el presente caso no se configuró ningún conflicto de interés, ni están presentes las circunstancias que puedan tender a establecer la existencia de un potencial conflicto de interés proscrito por el Canon 21 de Ética Profesional, *supra*. Tampoco concurren las circunstancias necesarias para ordenar la descalificación por violación al Canon 15 o al Canon 38 que requiere que todo abogado evite la apariencia de conducta impropia.

**IV.**

Por los fundamentos que anteceden, los cuales hacemos formar parte del presente dictamen, *expedimos* el auto de *certiorari* y *confirmamos* la *Resolución* recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones